[No. 31123. Department Two. September 29, 1949.]

THE STATE OF WASHINGTON, *on the Relation of* T. ALAN Campbell, *Plaintiff,* v. THE SUPERIOR COURT FOR KING COUNTY, *Robert M. Jones, Judge, Respondent.*[1]

[1]Reported in 210 P. (2d) 123.

*Kelley, O'Sullivan & Myers,* for relator.

*Durham, Guimont & Durham,* for respondent.

HILL, J.—Chapter 50 of the Laws of 1949, known as the family court act, became effective on June 9, 1949. On that date, there was pending in the superior court for King county an action for divorce wherein Rubye Campbell was plaintiff and T. Alan Campbell was defendant, which involved the issues as to custody of the two minor children of the parties. The trial date, July 6, 1949, had been set for this case when, on June 29, 1949, the defendant, the relator here, filed a petition for the transfer of the cause to the family court, in accordance with § 10 of the family court act.

We quote herewith §§ 9 and 10 of the act, which set forth the circumstances, so far as they are here material, under which the jurisdiction of the family court may be invoked, and the method for so doing:

"Sec. 9. Whenever any controversy exists between spouses which may result in the dissolution or annulment of the marriage or the disruption of the household, and there is any minor child of the spouses or of either of them whose welfare might be affected thereby, the Family Court shall have jurisdiction over the controversy and over the parties thereto and all persons having any relation to the controversy as provided in this act.

"Sec. 10. Prior to the filing of any action for divorce, annulment or separate maintenance, either spouse or both spouses may file in the Family Court a petition invoking the jurisdiction of the Court for the purpose of preserving the marriage by effecting a reconciliation between the parties or for amicable settlement of the controversy between the spouses so as to avoid further litigation over the issue involved. *In any case where an action for divorce,* annulment or separate maintenance *shall have been filed, either party thereto may by petition filed therein have the cause transferred to the Family Court* for proceedings in the same manner as though action had been instituted in the family court in the first instance." (Italics ours.)

It is conceded that relator's petition disclosed the jurisdictional facts set forth in § 9 and that he followed the procedure outlined in § 10. The petition was presented to the respondent judge, then acting as presiding judge of the superior court for King county, who refused to transfer the cause to the family court for the reason stated in his brief that,

". . . as presiding judge he does not have the authority to designate a judge to act as Family Court judge when all of the judges of the court have not appointed one of their members to so act."

It is further the position of the respondent judge,

". . . that such designation cannot be made until January of 1950, it being the first January to follow the enactment of the statute."

His position is based upon an interpretation of § 2 of the act. Sections 1 and 2, which must be read together, are as follows:

"Section 1. Each Superior Court shall exercise the jurisdiction conferred by this act and while sitting in the exer-

cise of such jurisdiction shall be known and referred to as the 'Family Court.'

"Sec. 2. In counties having more than one judge of the Superior Court the judges of such Court shall annually, in the month of January, designate one or more of their number to hear all cases under this act. The judge or judges so designated shall hold as many sessions of the Family Court in each week as are necessary for the prompt disposition of matters before the court."

The respondent judge's interpretation, again stated in his own words, is:

"The respondent takes the position that as to King County the law did not become effective on midnight June 8, 1949, but, by its express terms, it would only become effective in the January of the year following its enactment because of the language used in Section 2."

The refusal of the respondent judge to grant the relator's request for a transfer of the divorce action to the family court is before us for review on a writ of certiorari.

If the respondent judge is correct in his interpretation of § 2, this act became effective on June 9, 1949, in the twenty-one counties of this state having only one superior court judge, but does not become effective until some undetermined date in January, 1950, in the eighteen counties of the state which have two or more superior court judges. Because we do not agree with the respondent judge as to the meaning and effect of § 2, we need not discuss whether there is any reasonable basis of classification upon which a statute of this character, enacted for the obvious purpose of using conciliation for the holding of families together, and to slow down the rapidly increasing tempo of family disintegration, could be effective in Asotin county, where the number of divorce actions is comparatively small, and not effective in King county, where the number of divorce actions filed has exceeded six thousand in a single year. In our opinion, the respondent judge reads into § 2 a limitation or restriction on the power and jurisdiction of the superior court for King county (and other superior courts having more than one judge) that is not there.

A consideration of Art. IV, § 5, of our state constitution is in order.

■ There is in each of the organized counties of this state a superior court. Constitution, Art. IV, § 5. There may be two or more judges, but there is only one superior court in each county: *State ex rel. Lytle v. Superior Court,* 54 Wash. 378, 103 Pac. 464. The superior court of each county has the same jurisdiction within that county as the superior court of every other county has within its county. Where there are two or more judges of the superior court in any county, their authority is identical, for, by that same section of the constitution, it is provided that:

"The judgments, decrees, orders, and proceedings of any session of the superior court held by any one or more of the judges of such court shall be equally effectual as if all the judges of said court presided at such session. . . ."

■ When a particular judge is designated as the "probate judge" or the "juvenile court judge" (a designation of a particular department as the "probate department" or the "juvenile court" would perhaps be less confusing), the other departments of the superior court in that county do not lose jurisdiction in probate and juvenile court matters. However, the exercise of that jurisdiction may be restricted or limited by statute or court rule, under another provision of the same section of our constitution which provides that:

"In any county where there shall be more than one superior court judge, . . . the business of the court shall be so distributed and assigned by law, or, in the absence of legislation therefor, by such rules and orders of court as shall best promote and secure the convenient and expeditious transaction thereof. . . ."

Two California cases make clear the idea that departments of the superior court other than the one designated as the juvenile court still have jurisdiction over juvenile court cases, but may have their exercise of that jurisdiction limited. In *People v. Sanchez,* 21 Cal. (2d) 466, 132 P. (2d) 810, it is said, in explanation of the necessity for such a limitation:

"Confusion would result from conflicting adjudications upon the same subject matter by different departments of the same court."

The following quotation, from *People v. Barbera,* 78 Cal. App. 277, 248 Pac. 304, states both the question presented and the court's answer:

"The first point argued upon the appeal is that the trial court was without jurisdiction. This objection was not made at the trial and is presented for the first time upon appeal. It is based upon the following facts: The trial was had in department eleven of the superior court, state of California, in and for the city and county of San Francisco, and it is contended that this department and the judge presiding therein are not those designated by the judges of the superior court to hear cases coming under the Juvenile Court Law, in accordance with the provisions of section 16 of said law. Said section 16 provides: 'The Superior Court . . . shall exercise the jurisdiction conferred by this Act.' As a matter of convenience in procedure, it is also provided that the judges of the superior court, in counties or cities and counties having more than one judge, shall designate, annually, one or more of their number, whose duty it shall be to hear all cases coming under said act.

"If it be true that this cause should more properly have been heard in another department of the superior court, the record discloses, at most, an irregularity. [Citing cases.] Whether sitting separately or together, the judges of the superior court hold but one and the same court, and the jurisdiction they exercise in any cause is that of the court and not the individual, under article VI, section 6, of the constitution [citing cases]. Where the jurisdiction of a particular court is defined by the constitution the legislature cannot by statute restrict or enlarge that jurisdiction. [Citing cases.] Therefore, the Juvenile Court Law could not change the effect of the constitutional enactment, even if it sought to do so."

We quote so much of Art. VI, § 6, of the California constitution as was material to the decision in the foregoing case, to show the similarity of that section to Art. IV, § 5, of our own constitution:

"There shall be in each of the organized counties, or cities and counties, of the State, a superior court, for each of which

at least one judge shall be elected by the qualified electors of the county, or city and county, at the general State election. . . . There may be as many sessions of said court, at the same time, as there are judges thereof. The said judges shall choose, from their own number, a presiding judge, who may be removed at their pleasure. He shall distribute the business of the court among the judges thereof, and prescribe the order of business. The judgments, orders, and proceedings of any session of the Superior Court, held by any one or more of the judges of said courts, respectively, shall be equally effectual as if all the judges of said respective courts presided at such session. . . . ."

A third case construing that same section of the California constitution is *White v. Superior Court,* 110 Cal. 60, 42 Pac. 480:

"The jurisdiction of causes is vested by the constitution in the *court,* not in any particular judge or department thereof. The constitution, in fact, says nothing about departments. It provides that there may be as many sessions of the court at the same time as there are judges (Const., art. VI, sec. 6); but, whether sitting separately or together, the judges hold but one and the same court, and the jurisdiction they exercise in any cause is that of the court, and not the individual. The division into departments is purely imaginary, and for the conveniences of business and of designation. Transferring a cause for trial or disposition from one of those departments to another does not effect a change or transfer of the jurisdiction of that cause; that remains at all times in the court as a single entity. The same section of the constitution provides that the judges of the superior court of the city and county of San Francisco shall choose a presiding judge from their number, who 'shall distribute the business of the court among the judges thereof, and prescribe the order of business'; and it seems that the judges of that court have adopted rules for the guidance of the presiding judge in the performance of that duty, which it was competent for them to do, so long as those rules violate no express or implied provision of law. But it is perfectly obvious that, however proper those rules may be, or however desirable or essential to the impartial and orderly conduct of the business of the court that they should be adhered to, their violation in any instance cannot affect the jurisdiction of the court over a cause."

, We come now, in the light of the foregoing discussion, to an interpretation of §§ 1 and 2 of the family court act, heretofore set forth in this opinion.

■ By § 1 of the act, it is provided that each superior court "shall exercise the jurisdiction conferred by this act." Section 2 does not subtract from the jurisdiction so conferred, but was intended to facilitate the work of the family court in counties having more than one judge of the superior court. Its purpose was, to use the phraseology of our constitution, to provide for the assignment of this particular phase of the business of the court in such a way as would "best promote and secure the convenient and expeditious transaction thereof." The fact that the judges of the superior court for King county (and the other counties having two or more judges) are required "annually, in the month of January," to designate "one or more of their number to hear all cases under this act," in no wise precludes them from making such a designation forthwith by rule or order; and they cannot, by their failure so to do, postpone the operation of the statute in that county or the exercise of the jurisdiction conferred.

In *Wissenburg v. Bradley,* 209 Iowa 813, 229 N. W. 205, 67 A. L. R. 1075, the contention was made that Bradley, a district judge, who was hearing the case as judge of the juvenile court, had not been designated as such by the judges of the district court of that judicial district. The supreme court of Iowa pointed out that the statute gave jurisdiction to all district courts, that it was not designation by the other judges of the district that conferred jurisdiction, and that the provision for designation by the district court judges of one of their number to act as judge of the juvenile court was to facilitate the work of the juvenile court in districts in which large cities are situated. The court then said:

. "It is not, however, a matter of jurisdiction. If no such designation had been made by the district judges of the judicial district, it would not leave the respondent, as one of the judges of such district court, without authority to act as a judge of the juvenile court in any county within said judicial district."

The respondent judge in the instant case erred in refusing to grant relator's petition to transfer the divorce action to the family court. If he has no authority, as he insists, to assign the cause to another judge, then, in the absence of the designation of any other judge as the judge of the family court, he has authority as a judge of the superior court to constitute himself a judge of the family court, a proper application having been made, and to exercise the jurisdiction conferred by Chapter 50 of the Laws of 1949, and he is directed so to do unless the judges of the superior court for King county shall have designated "one or more of their number to hear all cases under this act" before the remittitur in this cause has gone down; and, if such designation shall have been made, he is directed to make the proper assignment.

SIMPSON, C. J., GRADY, MALLERY, and HAMLEY, JJ., concur.

[1]Reported in 210 P. (2d) 130.