[No. 38273.   Department Two.   April 28, 1966.]

*In the Matter of the Application for a Writ of Habeas Corpus of* BYRLE L. DILLENBURG, *Appellant,* v. ROGER F. MAXWELL, *as Superintendent of the State Reformatory, Respondent.**

*Reported in 413 P.2d 940.

*Edmond J. Wood, Michael H. Rosen,* and *Byrle L. Dillen-burg,* for appellant.

*The Attorney General* and *Paul J. Murphy, Assistant,* for respondent.

DONWORTH, J.—This is an appeal from an order entered by the Superior Court for Jefferson County denying petitioner's "Application Petition for a Writ of Habeas Corpus" and dismissing the proceeding after a hearing on the merits.

The petitioner, Byrle L. Dillenburg (also known as Larry Priest) prosecuted his petition in forma pauperis and acted as his own attorney in the preparation of his petition and two briefs filed in this court and in the examination and cross-examination of witnesses at the hearing in the trial court.[1]

Petitioner originally filed his petition in the Superior Court for Snohomish County because he was then confined in the Washington State Reformatory, which is located therein. Respondent is the superintendent thereof. After a brief hearing, that court, with the petitioner's consent, transferred the case to the Superior Court for Jefferson County.

In his petition, petitioner alleged 10 separate grounds for relief. In view of the conclusion we have reached after a study of the entire record, we need discuss only petitioner's ground (No. 9) that the order surrendering the jurisdiction of the juvenile court was void because it was not signed by a judge of the superior court. Respondent, who was represented by an assistant attorney general and the prosecuting attorney for Jefferson County, claims to have first raised this question at the hearings before the superior courts of Snohomish and Jefferson counties. In any event, both parties recognized the importance of this issue of law. So did the trial court, which held that the order (which was signed only by the chief probation officer) was valid to give the superior court jurisdiction of petitioner. The

---

[1] At the beginning of its oral opinion, the trial court observed: "The Court: Well, since the petitioner here, Byrle Laird Dillenburg, is a young man, I will be more specific in my conclusions and opinions than I might otherwise. First, I want to compliment him on the excellent presentation of his problem in the court today. There are few that I know who could, with as little training as he has had, handle it as well."

portions of the record bearing on this vital question will be discussed at some length later in this opinion.

Petitioner was born July 6, 1946. At all times material to the present proceeding, he was residing with his parents at Discovery Bay, Washington. On September 13, 1962, his mother called the sheriff's office and reported that he was a runaway. On September 20, 1962, at about 9 a.m., a resident of Brinnon, Washington, called the sheriff's office stating that three boys had pilfered a campsite near his place of business (the Rainbow Lodge) and that he thought one of them was petitioner. A deputy sheriff was dispatched to that area, and, after searching for petitioner all day, he finally located him on Highway 101 about half a mile south of Quilcene and arrested him between 5 and 6 p.m. He brought petitioner to Port Townsend and placed him in the county jail as a juvenile delinquent.

Just prior to petitioner's arrest he either had been driving, or had been an occupant of, an old car with an Oregon license. Two other boys were with him. When the deputy sheriff approached the car (which was then stopped in a private driveway), all three occupants fled into the brush in an attempt to escape from the officer. It later developed that this car was reported as stolen in the Washington Stolen Car Bulletin.

September 25, 1962, the chief probation officer, after conferring with petitioner and later with Judge Church, who was then the judge of the superior courts for Clallam and Jefferson counties, signed the following order entitled "Surrender of Jurisdiction."

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON IN AND FOR THE COUNTY OF CLALLAM [crossed out by pen]
JEFFERSON [inserted by pen]
JUVENILE DIVISION

IN THE MATTER OF THE WELFARE OF
LARRY PRIEST,                          No. J-529
a minor, whose true name is            SURRENDER OF
Byrle Laird Dillenburg                 JURISDICTION
Born 7-6-46.

The Court having considered the nature and gravity of the charges preferred against the above named minor and the facts and circumstances said to be involved,

IT IS HEREBY DECLARED, that the Juvenile Court refuses to accept and does now surrender jurisdiction of said minor.

IT IS THEREFORE ORDERED that said minor may be placed and held (pending further order herein by the Court) in such jail or other secure place as the circumstances warrant and as directed by the said officers.

DONE this 25 day of September, 1962, at Port Angeles, Washington.

H. T. Rogers

---

JUDGE [crossed out by pen]
CHIEF PROBATION OFFICER [inserted by typing]

The chief probation officer testified that petitioner was not given any formal hearing in the juvenile court after his arrest. The record shows that petitioner had been before the juvenile court on at least two previous occasions —in September, 1959, and in January, 1960. He had been committed at one time to the Luther Burbank School and at another time to the Fort Worden Diagnostic Center.

As to his purpose in interviewing petitioner in jail a few days after his arrest, the officer testified:

Q. Did you see the petitioner here on the 24th? A. I don't know whether I saw Larry in person on the 24th or not. I did talk to him and visit him in the jail a time or so while this was going on under juvenile jurisdiction. Q. What was the purpose of the visits? A. To talk to Larry, to get an idea of his attitude, and to make some decision as to whether the Juvenile Court could help this youngster. Q. Did Larry advise you that he had made a statement to the sheriff? A. I probably had a copy of the statement. Normally a copy of the statement is furnished to me with the officer's report. This is normal procedure, a copy of the officer's report and a copy of the statement, if any is taken. Q. And of course, during the time or times you visited him he was still being handled as a juvenile? A. Right. Q. And was one of the purposes of the visits and the studying of the report to make some decision in your mind as to whether it was a proper case for the Juvenile Court? A. Well, my prime concern here, as I recall there was no question so far as the Juvenile Court was concerned, as far as guilty or not guilty. It wasn't contested. But my objective was to talk to Larry

and going over this report and trying to arrive at some decision or recommendations in order to give to Judge Church on what procedure to follow in using the Juvenile Court. In other words, to assess Larry's attitude and his feeling about himself, and what his chances of rehabilitation was. Q. And did you make such a recommendation? A. Yes. Q. What was that recommendation? A. I recommended to Judge Church Juvenile Court jurisdiction be waived and he be tried as an adult.

He further testified as to his authority to sign the above quoted order as follows:

Q. Had you signed documents similar to this in other cases? A. Yes. Q. Surrendering or referring jurisdiction over to the criminal court? A. Yes. But let me explain here that this was in compliance with policies that Judge Church had directed me to follow. I never signed one of these forms—if you will notice, that is a form order made out for Clallam County, the Clallam is knocked out and Jefferson is inserted, it is filled in in long hand—any time there was a juvenile situation came up where there was the possibility of waiver of jurisdiction, I always discussed this in person with Judge Church, and I never signed one of those unless it was by his direction I signed it and issued a waiver of jurisdiction. Q. Well, was it at his direction, then, that you signed this? A. At Judge Church's oral direction, right. I wouldn't consider signing one without it. . . . Q. Did you consider you actually had such authority to issue such an order over your signature before you were Court Commissioner? A. Only by the oral orders of Judge Church, not myself. I didn't have that authority by the fact that I was a probation officer, but Judge Church, I felt, had authority to give me an order, and when he gave me an order I carried it out.

On October 3, 1962, the prosecuting attorney (William J. Daly) filed an information charging petitioner with the crime of burglary in the second degree, committed as follows:

That on or about the 12th day of September, 1962, in the County of Jefferson, State of Washington, the said defendant, Byrle Laird Dillenburg, with intent to commit some crime therein, did, willfully, unlawfully and feloniously break and enter the dwellinghouse of another, to-wit: the dwellinghouse of one William Ellard, con-

trary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Washington.

Thereafter, the matter of petitioner's plea to this information and the sentence to be imposed was before the superior court six times as shown in the appendix.

The crucial question before us is whether a boy 16 years and 2 months old who has been arrested on the charge of having committed a crime may be turned over to the proper officers for trial in the superior court as an adult under the provisions of the criminal code upon an order signed by the chief probation officer at the oral direction of the juvenile court judge.

The statutory provisions relating to the constitution and operation of the juvenile court are found in RCW 13.04.030. The powers and duties of probation counselors are set forth in RCW 13.04.040, which provides that they shall make such investigations of the antecedents, character, family history, environments, and cause of the dependency or delinquency of every child brought before the juvenile court as may be required by the court. They are required to make a written report thereof to the juvenile court judge. These counselors are given all the powers conferred on sheriffs and police officers to make arrests for violations of state laws or ordinances relating to the care, custody, and control of delinquent or dependent children. They are given the duty of taking charge of the child before and after trial in such manner as the juvenile court shall direct.

After providing for the initiation and conducting of hearings before the juvenile court, RCW 13.04.120 specifically deals with the procedure required after a child under 18 years of age has been arrested for alleged criminal activity. This section provides as follows:

> When, in any county where a juvenile court is held, a child under the age of eighteen years is taken into custody by a parole, peace, police or probation officer, such child shall be taken directly before such court, or placed in the detention home or place under the juris-

diction of such court, or into the custody of the court probation officer: *Provided,* That if the parent, guardian, custodian or a responsible relative of the child furnishes the officer a signed statement agreeing to produce the child at the next juvenile court session, the child may be released to the signer of the statement. Any such signer who fails, without just cause shown to the court, to produce such child as agreed, shall be guilty of contempt of court and may be punished accordingly.

The court may proceed to hear and dispose of the case in the same manner as if the child had been brought before the court upon petition as hereinbefore provided. In any such case, the court shall require notice to be given and investigation to be made as in other cases under this chapter, and may adjourn the hearing from time to time for such purpose. Pending final disposition of the case the court may make such disposition of the custody of the child as it shall deem for the best welfare of the child. If, upon investigation, it shall appear that a child has been arrested upon the charge of having committed a crime, *the court, in its discretion, may order such child to be turned over to the proper officers for trial under the provisions of the criminal code.*

Nothing in this section shall be construed as forbidding any peace officer, police officer or probation officer from immediately taking into custody, without process, any child who is found violating any law or ordinance, or who is reasonably believed to be a fugitive from his parents or from justice, or whose surroundings are such as to endanger his health, morals or welfare, unless immediate action is taken. In every such case, the officer taking the child into custody shall immediately report the fact to the juvenile court and the case shall then be proceeded with as provided in this chapter: *Provided,* That whenever a child is arrested for a violation of any law, including municipal ordinances, regulating the operation of vehicles on the public highways, a copy of the traffic citation and a record of the action taken by the juvenile court shall be forwarded by the court to the director of licenses in the same manner as provided in RCW 46.20-.280. (Italics ours.)

The circumstances under which the order involved in this case was signed by the chief probation officer are stated in his testimony which is quoted above.

In the trial court's oral opinion in the present proceeding the court's reasons for upholding the validity of the chief probation officer's order were stated as follows:

I think perhaps I will first discuss this transfer of jurisdiction of a juvenile to the Superior Court. It's given me a lot of concern. It is in the file. It has to be determined. Turning first to the section of the statute Mr. Murphy mentioned, it is quite clear in the beginning of this juvenile law, many years ago, it was provided that in counties in which there is no resident judge, the Court Commissioner shall have power and authority concurrent with the Superior Court and the judge thereof to hear all matters, relating to juveniles. Now, this specifically provided that a court commissioner has the right to enter any order or judgment.

The court then discussed the statutory powers of a court commissioner. See RCW 13.04.030 and 040. Several months after the signing of the order here in question, the chief probation officer, on November 30, 1962, was appointed as court commissioner. However, his powers and duties in that capacity have no direct bearing on the question to be decided by this court.

The oral opinion then continued as follows:

I have read RCW 13.04.120 many times, and this morning I thought it was more worry than I feel now, because of the wording of the statute. It says, if upon investigation it shall appear that a child has been arrested upon the charge of having committed a crime the Court in its discretion may order such child to be turned over to the proper officers for trial under the provisions of the criminal code. The question is, does the statute indicate that it is necessary that a court enter a written order in order to direct the prosecution under the criminal code of a child who has committed a crime. I can't think it does. I think the Court in its discretion may so order, orally. Judge Church did, here. At the time of the arraignment he said, "I will state this to you and both counsel." Now, that meant you, Mr. Dillenburg, and to both counsel, meaning your counsel and the prosecuting attorney. "I thought this was a situation where a juvenile aspect should not be given, because I wanted this boy to be under a stricter and better and more effective and com-

prehensive probation than could be effected in the juvenile aspect of it.

■ We are not in agreement with the views expressed by the trial court at the habeas corpus hearing. Although there is no doubt that Judge Church, as juvenile court judge, was familiar with petitioner's criminal record as a juvenile offender and orally exercised his discretion, he (1) failed to give petitioner a juvenile court hearing as to whether he should be tried as an adult, and (2) failed to enter an order carrying out the result of his decision.

■ The matter of the trial of a juvenile under 18 years of age as an adult in the superior court on a felony charge is not a case over which that court has original jurisdiction. The superior court as such has no jurisdiction to try such juvenile offender on a felony charge unless and until the conditions precedent prescribed in RCW 13.04.120 (quoted above) have been complied with. The record of this compliance with the statute must appear officially in the record of the superior court which later tries the juvenile offender. An oral or memorandum opinion of a trial court is not a substitute for the final order or judgment. It is no more than the trial court's verbal expression of his informal opinion at that time. It has no final or binding effect unless formally incorporated into a written order signed by the court. See *Ferree v. Doric Co.*, 62 Wn.2d 561, 383 P.2d 900 (1963), and cases cited therein.

If the rule is applicable in those civil cases which define a final judgment, it should be equally applicable in the instance of a criminal trial of a juvenile where the superior court's jurisdiction depends on the official order of the juvenile court entered in the record. Until that written order is entered, the superior court has no jurisdiction.

A court may give oral orders in certain circumstances in the conduct of a trial over which it has jurisdiction. However, when the object of the order is to surrender jurisdiction and to create jurisdiction of the case in another state court, we are of the opinion that the order must be in writing. This is particularly true since the order must

appear in the record of the trial court in order to establish that the trial court had jurisdiction to hear the case. See *State v. Hager,* 157 Wash. 664, 290 Pac. 230 (1930).

Generally speaking, the orders of the juvenile court are reviewable by this court upon petition for a writ of certiorari. *Wade v. State,* 39 Wn.2d 744, 238 P.2d 914 (1951). Had petitioner sought a review of the order signed by the chief probation officer, we could not have passed on the merits (the issue of whether the trial court had properly exercised discretion) because it was not signed by a juvenile court judge or even by a court commissioner. There was only an oral order. See *Fairview Lumber Co. v. Makos,* 44 Wn.2d 131, 265 P.2d 837 (1954), and *Strickland v. Rainier Golf & Country Club,* 156 Wash. 640, 287 Pac. 900 (1930).

In *State v. Ring,* 54 Wn.2d 250, 339 P.2d 461 (1959), the defendant was under 18 years of age when the crime was committed but had reached his 18th birthday prior to the time of trial. We held that the superior court had jurisdiction to try him as an adult, saying, at p. 253:

At the time of his arrest, Harold M. Ring was under eighteen years of age. Shortly thereafter, the juvenile department of the Stevens county superior court purported to transfer "the case against said minor" to the superior court, pursuant to RCW 13.04.120. A second amended information, which included Harold M. Ring, was then filed.

The case went to trial on this information, at which time Harold M. Ring was eighteen years of age. It now appears that the copy of the order of the juvenile court, filed *in this proceeding,* was not properly authenticated; hence, defendant Harold M. Ring now contends that the superior court did not acquire jurisdiction over him. This argument is made for the first time in this court; it was not urged in the trial court.

The superior court has original jurisdiction "in all criminal cases amounting to felony." Art. IV. § 6, Washington constitution. The juvenile court act recognizes that the superior court has original jurisdiction "in all cases coming within the terms of this chapter." RCW 13.04.030.

RCW 13.04.120 provides that the juvenile court (really the superior court or a department thereof) "may pro-

ceed to hear and dispose of the case" against a child under eighteen years of age. This may be a *bar* to proceeding against him in the superior court while he is under eighteen, unless the juvenile court orders "such child to be turned over . . . for trial under the provisions of the criminal code," but it does not deprive the superior court of jurisdiction after he reaches eighteen years of age.

Our conclusion that defendant's contention is without merit is dictated by the *rationale* of *State v. Melvin,* 144 Wash. 687, 689, 258 Pac. 589 (1927), wherein this court said:

"We think it follows, therefore, that the law which provides for protection and reformation or punishment within the discretion of the court, in the case of a delinquent minor proceeded against before he arrives at the age of eighteen years, constitutes no bar to a criminal action brought against him, after he becomes eighteen years of age, for an act committed prior to that age."

The fact that Harold M. Ring was under eighteen years of age when the second amended information was filed is of no moment. He was eighteen when the case was tried. This conclusion is in accord with the majority rule discussed in the annotation, "Age of child at time of alleged offense or delinquency, or at time legal proceedings are commenced, as criterion of jurisdiction of juvenile court," appearing in 123 A.L.R. 446.

In the case just cited, the juvenile court order was not properly authenticated. Therefore, if the defendant in that case had not become 18 years of age before he was tried, the inference is that the superior court could not have tried him as an adult.

The only authority given by the juvenile court law to anyone to function as a judge is limited by the legislature to court commissioners in certain circumstances. See RCW 13.04.030 and RCW 2.24.040. Under the conditions described therein, the commissioner is vested with concurrent jurisdiction with the superior court judge to perform the functions of a juvenile court judge.

If the legislature had intended to authorize probation officers to execute court orders in lieu of, or at the direction

of, a juvenile court, it would have so provided by definite language in the act.

■ Furthermore, RCW 13.04.120 entitles the juvenile to a hearing before final disposition of his case can be made by the juvenile court. The investigations provided for in that section are not a substitute for but rather an aid to a hearing.

This procedure includes, essentially, proper notice and the right to appear in a hearing before a juvenile court judge. See RCW 13.04.120 (quoted above) and RCW 13.04-.070. The fact that the petitioner here had been before the juvenile court several times because of serious offenses and had a bad criminal record does not warrant the court's dispensing with a hearing on the question of whether he should be tried as an adult. The juvenile court judge must, before entering an order, exercise his discretion after affording the juvenile an opportunity to be heard as to whether he should be tried as a juvenile or as an adult. "In any such case, the court shall require notice to be given and investigation to be made as in other cases under this chapter, and may adjourn the hearing from time to time for such purpose." The sentence just quoted requires a hearing, as well as an investigation, in all instances before an order is issued making final disposition of the child's custody within the jurisdiction of the juvenile court. It seems obvious to us that the "Surrender of Jurisdiction" signed by the probation officer in this case is such a "final disposition" in that it purports to divest the juvenile court of jurisdiction and to vest jurisdiction in the superior court. Therefore, a hearing is required.

The attorney general in his supplemental brief, in support of the trial court's dismissal of petitioner's petition, cites *United States v. Stevenson*, 170 F. Supp. 315 (1959), which he contends involves an act of Congress relating to the District of Columbia which is similar to the above-quoted portion of RCW 13.04.120. The district court in that case pointed out that the act of Congress did not require that a quasi-judicial or judicial hearing be conducted by

the judge before making the waiver of jurisdiction and that the "full investigation" can be conducted on an ex parte basis.

The recent opinion of the United States Supreme Court (filed March 21, 1966) concerning the District of Columbia statute relating to the juvenile court is a complete answer to the *Stevenson* case, *supra,* and the Attorney General's argument that only an investigation is needed. In *Kent v. United States,* 383 U. S. 541, 16 L. Ed. 2d 84, 86 Sup. Ct. 1045 (1966), the juvenile court judge surrendered the jurisdiction of the juvenile court after a "full investigation" but without holding any hearing. He made no findings and gave no reason for the waiver. Petitioner Kent had a substantial prior juvenile court record. In holding that the juvenile court had denied to petitioner Kent the basic requirements of due process under the District of Columbia Juvenile Court Act, the United States Supreme Court, in the majority opinion, states:

> We agree that the order of the Juvenile Court waiving its jurisdiction and transferring petition for trial in the United States District Court for the District of Columbia was invalid. There is no question that the order is reviewable on motion to dismiss the indictment in the District Court, as specified by the Court of Appeals in this case. *Kent v. Reid, supra* [316 F.2d 331 (D.C. Cir. 1963)]. The issue is the standards to be applied upon such review.

> We agree with the Court of Appeals that the statute contemplates that the Juvenile Court should have considerable latitude within which to determine whether it should retain jurisdiction over a child or—subject to the statutory delimitation—should waive jurisdiction. But this latitude is not complete. At the outset, it assumes procedural regularity sufficient in the particular circumstances to satisfy the basic requirements of due process and fairness, as well as compliance with the statutory requirement of a "full investigation." *Green v. United States,* 308 F.2d 303 (C.A.D.C.Cir.1962). The statute gives the Juvenile Court a substantial degree of discretion as to the factual considerations to be considered, the weight to be given them and the conclusion to be reached. It does not confer upon the Juvenile Court a license for arbitrary

procedure. The statute does not permit the Juvenile Court to determine in isolation and without the participation or any representation of the child the "critically important" question whether a child will be deprived of the special protections and provisions of the Juvenile Court Act. It does not authorize the Juvenile Court, in total disregard of a motion for hearing filed by counsel, and without any hearing or statement or reasons, to decide—as in this case—that the child will be taken from the Receiving Home for Children and transferred to jail along with adults; and that he will be exposed to the possibility of a death sentence instead of treatment for a maximum, in Kent's case, of five years, until he is 21.

We do not consider whether, on the merits, Kent should have been transferred; but there is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel, without a statement of reasons. It is inconceivable that a court of justice dealing with adults, with respect to a similar issue, would proceed in this manner. It would be extraordinary if society's special concern for children, as reflected in the District of Columbia's Juvenile Court Act, permitted this procedure. We hold that it does not. (Footnotes omitted)

In our opinion, this decision is conclusive of the issue in this case of whether a judicial hearing is required by our statute in order to fulfill the procedural requirements of due process.

For the reasons stated herein, we must hold that the purported order entitled "Surrender of Jurisdiction" (quoted above) was null and void, and hence the superior court, in accepting petitioner's plea of guilty and entering its judgment and sentence, was acting without legal authority.

We note that petitioner is now over 18 years of age and may be tried in the superior court as an adult upon the information referred to in the appendix hereto. *State v. Melvin,* 144 Wash. 687, 258 Pac. 859 (1927); *State v. Ring,* 54 Wn.2d 250, 339 P.2d 461.

Accordingly, the judgment and sentence of the superior court denying petitioner's petition for habeas corpus is reversed with directions to enter an order directing re-

spondent to forthwith transfer petitioner to the county jail of Jefferson County. Petitioner shall be promptly rearraigned upon the information filed in cause No. C-575, and thereupon be otherwise dealt with according to law. If the state fails to take such action within 20 days after his arrival at the county jail, petitioner shall be released from custody.

It is so ordered.

ROSELLINI, C. J., WEAVER and HAMILTON, JJ., and BARNETT, J. Pro Tem., concur.

APPENDIX

October 8, 1962 (Judge Eugene Wright presiding). The prosecutor advised the court that petitioner had a previous criminal history. Mr. A. Clemens Grady appointed as counsel for petitioner and bail fixed at $2,000.[2]

October 15, 1962 (Judge Church presiding). Petitioner's counsel appeared with the prosecuting attorney and advised the court that they were expecting to receive information from the Fort Worden Diagnostic Center concerning the behavior and disciplining problem which petitioner presented when he was confined there under the order of the juvenile court. Petitioner was not present in court on this occasion and nothing was done concerning his case.

October 22, 1962 (Judge Church presiding). Petitioner and his counsel were present for arraignment. The prosecuting attorney stated that

---

[2]At this hearing the following statements (among others) were made by the court in petitioner's presence: "The Court: Normally the bail on this charge would be how much, Mr. Daly? Mr. Daly: We normally fix around $2,500. If the boy were an adult— The Court: The charge here is breaking and entering a dwelling house. Would you be able to post bail of $1,000, or $2,000? The defendant: I don't believe so."

Petitioner contended in this proceeding that because he was never furnished with a copy of the information he mistakenly pleaded guilty to the Discovery Bay burglary which was committed September 19, 1962, whereas he thought he was pleading guilty to the Brinnon burglary which was committed September 12, 1962, which did *not* involve breaking and entering a dwelling house. He claimed that he did not discover this error until June or July, 1964.

The court's statement quoted removes any factual basis for petitioner's contention. From his previous criminal experience as shown by his juvenile record, he knew that the Brinnon burglary involved the pilfering of an unoccupied summer camp. He must have known that no breaking and entering of a dwelling house was involved in that burglary. Hence there is no foundation for his alleged mistake in pleading guilty.

the information had been received from the Diagnostic Center and delivered to petitioner's counsel for inspection. His counsel stated that he had not had time to read it. A continuance was granted by the court.

October 29, 1962 (Judge Church presiding). Petitioner's counsel stated: "In regard to that matter, your Honor, I am quite sure we are going to enter a plea of guilty. I am quite sure no interest of the defendant will be jeopardized by continuing it another week." The prosecuting attorney stated that he had no objection and the court granted a further continuance of one week. Petitioner was not present.

November 5, 1962 (Judge Church presiding). Petitioner and his counsel were present for arraignment. The prosecuting attorney (Mr. Daly) stated that they were present for arraignment. The following proceedings then took place:

The Court: Is this man ready to plead, Mr. Grady?

Mr. Grady: Yes, your Honor, the defendant is ready.

The Court: Come forward, please. You are represented by Mr. Grady as your attorney, are you?

The Defendant: Yes.

The Court: Have you discussed this matter with him?

The Defendant: Yes.

The Court: Thoroughly, so that you understand all the aspects of risk and hazards there may be in this, if you plead guilty?

The Defendant: Yes.

The Court: Is he ready to plead, Mr. Grady?

Mr. Grady: Yes, he is.

The Court: How do you plead to this charge in the Information, wherein it is alleged that you are guilty of the crime of burglary in the second degree—guilty or not guilty?

The Defendant: Guilty.

The Court: What disposition do you suggest in this matter, Mr. Daly?

. . . .

But I think, your Honor, let's refer this to the probation officer.

The Court: I think we should. Frankly, I will state this to you and both counsel, I thought this was a situation where a juvenile aspect should not be given, because I wanted this boy to be under a stricter and better and more effective and comprehensive probation than could be effected in the juvenile aspect of it. It is not at all satisfactory. It is good enough, but there isn't enough of it. We are exceedingly fortunate to have a senior parole officer assigned to this area here.

Mr. Daly: I understand the matter will be referred for pre-sentence investigation and report?

The Court: Yes, sir.

December 17, 1962 (Judge Church presiding). Petitioner, his counsel, and the prosecuting attorney were present for the imposition of sentence. The following proceedings were then had:

Mr. Daly: If the Court will examine the file it will disclose to him that during your Honor's absence the defendant was examined by Judge Wright. He was then and there advised of his constitutional and statutory rights. Inquiry was made as to his financial ability, whereupon Judge Wright being satisfied that the man was without funds, Mr. A. C. Grady, a member of the Bar of this county, was appointed to represent the defendant. On November 5 the matter came on for

arraignment before your Honor, at which time your Honor reiterated the statements made by Judge Wright as respecting his constitutional rights. He was then present and represented by his counsel, Mr. Grady, whereupon he entered his plea of guilty to the charge contained in the Information. Thereafter your Honor indicated that this was a matter that should be properly referred to the probation officer for a pre-sentence investigation and report. That incident occurred during the transition and change of probation officers in the Clallam and Jefferson Counties, and then the matter was then referred to Mr. Rarity, our present probation officer; my information is now that Mr. Rarity has filed his report and recommendations in the premises. He has also communicated his recommendations and findings to Mr. Grady. The matter is up now for sentence.

The Court: Mr. Grady?

Mr. Grady: If the Court please, I assume that having read the report of the probation officer, there is very little I could add. The defendant in this case, strangely enough, although having had many opportunities to use intoxicating liquors, has not done so, and I think that perhaps shows a resentment to the home condition. He was born July 6, 1946, he is quite young, and it has been my hope all the time we might possibly obtain a deferred sentence for the defendant. I realize now the more recent reports are not too favorable. I don't know what more anyone can do. I know the history very well. The probation officer feels that if he could become professional in some kind of a trade and get interested in something like that, he might have some hope for his future.

The Court: Is the defendant here?

Mr. Daly: Yes, your Honor. Come forward.

The Court: This young man has hitherto plead, has he not, Mr. Grady?

Mr. Grady: Yes, he has entered a plea.

The Court: I have the benefit of an intelligent and exhaustive analysis of this problem from Mr. Rarity. I read it carefully before I came in this morning. It is not necessary to go through the whole record on this. However, I will briefly outline the background. He was under the supervision or at least referred to the Juvenile Court in September 1959 in connection with the stealing of certain coins. January 1960 there was an incident of an automobile theft. The same month there was a burglarious entering of a residence. He was at Luther Burbank for a time, his adjustment there seems to have been less than satisfactory. It is the judgment of this Court that this defendant Byrd Laird Dillenburg is guilty of the crime charged and alleged in the Information upon his plea of guilty, and that he be sentenced to the State Reformatory at Monroe, Washington, for a period not to exceed fifteen years. I want to take the time to say something about this to the young man who is going to experience the confinement at Monroe. It is one of the outstanding institutions in the United States. It is in charge of one of the outstanding penologists, a man whom the institution is exceedingly fortunate to be able to prevail on him to take over the management and direction of the state reformatory. There are opportunities there that can be found nowhere else. In this state certainly, and scarcely in any other state.

Judgment and sentence was duly entered on December 17, 1962, pursuant to the oral pronouncement by Judge Church and a warrant of commitment was issued in accordance therewith.

It is to be noted that Judge Church retired as judge of the Superior Court of Clallam and Jefferson Counties on August 31, 1963, and died prior to the hearing of the present habeas corpus proceeding.

[En Banc.   January 19, 1967.]*

HAMILTON, J.—This matter comes before the court upon respondent's petition for rehearing, in which respondent requests a reconsideration of the ultimate relief granted to petitioner, Byrle L. Dillenburg, by our decision filed April 28, 1966, *supra*.

The background facts are set forth extensively in our former decision. We reiterate only so much of those facts as are necessary for an understanding of our disposition of the contentions raised by respondent's petition for rehearing and petitioner's response thereto.

Petitioner, at the age of 16, was, on September 20, 1962, apprehended by officers upon suspicion of being involved in felonious activities and turned over to the juvenile court authorities of Jefferson County, Washington. After conferring with petitioner and later with the then superior court judge of Jefferson County, the juvenile probation officer signed a document the import of which was to surrender or decline juvenile court control over petitioner. This was accomplished without the benefit of a formal hearing in juvenile court. Thereafter, the prosecuting attorney of Jefferson County filed an information in the superior court charging petitioner with the crime of burglary in the second degree. Capable counsel was duly appointed for petitioner. Following appointed counsel's investigation of the charges and several consultations with petitioner, and after being judicially advised of his constitutional rights, petitioner, with the concurrence of his counsel, entered a plea of guilty to the charge on November 5, 1962. A presentence investigation was ordered, and on December 5, 1962, petitioner was sentenced to the Washington State Reformatory for a maximum term of 15 years. After petitioner had passed his 18th birthday, he filed a petition for a writ of habeas corpus in the Superior Court for Snohomish County, which court, with petitioner's consent, transferred the case to the Superior Court for Jefferson County.

By his petition for a writ of habeas corpus, petitioner alleged several grounds upon which he sought relief from

*Reported in 422 P.2d 783.

his incarceration. They presented two questions: (1) Was the declination of juvenile court control appropriately effected? and (2) were petitioner's constitutional rights violated or invaded by his arrest and the proceedings which followed?

The superior court answered the first question in the affirmative and the second question in the negative. Petitioner appealed.

In our former decision we basically passed only upon the first question. Taking note of (a) the record then before us, (b) the undisputed fact that the order purporting to relinquish juvenile court authority was signed by the probation officer rather than the judge or a court commissioner, and (c) *Kent v. United States*, 383 U.S. 541, 16 L. Ed. 2d 84, 86 Sup. Ct. 1045 (1966), we, in essence, concluded that the relinquishment was invalid because the juvenile court branch of the Superior Court for Jefferson County had (1) failed to afford petitioner an appropriate juvenile court hearing as to whether he should be tried as an adult offender in the superior court, and (2) failed to enter a proper and validly executed order relinquishing juvenile court control over petitioner. Upon these premises, we nullified petitioner's plea of guilty in the superior court, vacated the resultant judgment and sentence, and remanded petitioner to the superior court for rearraignment upon the information. We further stated that if the state failed to rearraign petitioner within 20 days after his arrival at the county jail, he should be released from custody.

Respondent, in requesting a rehearing, contends that under our statute and in keeping with the due process concepts enunciated in *Kent v. United States, supra,* we are not restricted to granting a new trial. Rather, respondent, asserts, we may remand for an appropriate hearing and a determination of the propriety, under all of the circumstances, of the declination of juvenile court authority. Petitioner and amicus curiae, on the other hand, contend that in our original decision in the instant case we held the waiver of juvenile court control went to the jurisdiction of the superior court to proceed with petitioner's prosecution

as an adult, and accordingly, if the waiver be defective, all subsequent proceedings must be vitiated.

In reaching a disposition of the petition for rehearing, we deem it appropriate, at the outset, to clarify and modify our use of the word "jurisdiction" in our original opinion.

Const. art. 4, §§ 5 and 6, respectively, provide in pertinent part:

> *There shall be in each of the organized counties of this state a superior court* for which at least one judge shall be elected by the qualified electors of the county at the general state election: . . . . In any county where there shall be more than one superior judge, *there may be as many sessions of the superior court at the same time as there are judges thereof,* . . . *and the business of the court shall be so distributed and assigned by law or* in the absence of legislation therefor, *by such rules and orders of court as shall best promote and secure the convenient and expeditious transaction thereof. The judgments,* decrees, orders and proceedings *of any session of the superior court* held by any one or more of the judges of such court *shall be equally effectual* as if all the judges of said court presided at such session. (Italics ours.) Const. art 4, § 5.

> *The superior court shall have original jurisdiction* in all cases in equity and in all cases at law which involve the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine, and in all other cases in which the demand or the value of the property in controversy amounts to one thousand dollars, or a lesser sum in excess of the jurisdiction granted to justices of the peace and other inferior courts, *and in all criminal cases amounting to felony, and in all cases of misdemeanor not otherwise provided for by law;* . . . and for such special cases and proceedings as are not otherwise provided for. *The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court;* . . . . (Italics ours.) Const. art. 4 § 6.

■ In so providing, the state constitution created the superior courts of the respective counties as constitutional courts, as distinguished from statutory courts, and clothed the superior courts with general jurisdiction in all cases

and over all proceedings in which jurisdiction was not exclusively vested by law in some other forum or court. *State ex rel. Malmo v. Case*, 25 Wn.2d 118, 169 P.2d 623, 165 A.L.R. 1426 (1946).

In recognition of and in keeping with this constitutional investment of original and general jurisdiction in the superior courts, the Juvenile Court Law (RCW 13.04) significantly provides in RCW 13.04.030 and 13.04.120:

> *The superior courts* in the several counties of this state, shall have *original jurisdiction* in all cases coming within the terms of this chapter. . . . *A special session* to be designated as the *"juvenile court session"* shall be provided for the hearing of such cases and the findings of the court shall be entered in a book or books kept for the purpose, and known as the "juvenile record," *and the court may, for convenience, be called the "juvenile court."* (Italics ours.) RCW 13.04.030.

> If, upon investigation, it shall appear that a child has been arrested upon the charge of having committed a crime, *the court, in its discretion, may order such child to be turned over to the proper officers for trial under the provisions of the criminal code.* (Italics ours.) RCW 13.04.120.

■ It is manifest from the foregoing statutory excerpts that the legislature did not intend to establish, nor did it undertake to establish, a juvenile court separate and distinct from the superior court. Instead, it simply authorized the characterization of the superior court, or a "session" thereof, as a "juvenile court" when processing those cases falling within the terms of the Juvenile Court Law. Thus, the statute did not divest, nor subtract from, the general jurisdiction of the superior courts, and it did not purport to vest "exclusive jurisdiction" over dependent or delinquent children in any other forum or court. At most, the statute, when read in its entirety, and in conjunction with the above quoted constitutional provisions, undertakes to distribute and assign a phase of the business of the superior court, as authorized by Const. art. 4, § 5, *supra,* and to prescribe the mode of procedure by which the superior court shall initiate, process and apply the remedies made

available by the Juvenile Court Law for the treatment of dependent or delinquent children as those terms are defined in the statute. The superior court, therefore, maintains and retains "jurisdiction" over such cases, being delimited procedurally, however, by statutory provision and due process concepts, as to the manner in which it may authorize the remedy of criminal prosecution in cases involving the commission of crimes by children covered by the statute. See *State ex rel. Campbell v. Superior Court*, 34 Wn.2d 771, 210 P.2d 123 (1949), for a discussion comparing the jurisdictional aspects of family court and juvenile procedures in superior court.

When, then, we spoke of "surrender of jurisdiction" and "jurisdiction" in reference to juvenile and superior court proceedings in our original opinion in this case, we were not accurately using the word "jurisdiction" in its true juridical and traditional sense. More properly, we were referring to the procedural steps required by our Juvenile Court Law and by due process concepts whereby the superior court, sitting in juvenile court "session," grants to prosecuting officials the "authority to proceed," in an appropriate case, with the criminal prosecution of a child under 18 years of age.

Speaking of these procedural steps, we said (*supra* at 343):

> This procedure includes, essentially, proper notice and the right to appear in a hearing before a juvenile court judge. See RCW 13.04.120 (quoted above) and RCW 13.04.070. The fact that the petitioner here had been before the juvenile court several times because of serious offenses and had a bad criminal record does not warrant the court's dispensing with a hearing on the question of whether he should be tried as an adult. The juvenile court judge must, before entering an order, exercise his discretion after affording the juvenile an opportunity to be heard as to whether he should be tried as a juvenile or as an adult.

We then quoted from *Kent v. United States*, 383 U.S. 541, 16 L. Ed. 2d 84, 86 Sup. Ct. 1045 (1966), the pertinent and applicable portion of the quotation being as follows, at 344:

The statute gives the Juvenile Court a substantial degree of discretion as to the factual considerations to be considered, the weight to be given them and the conclusion to be reached. It does not confer upon the Juvenile Court a license for arbitrary procedure. The statute does not permit the Juvenile Court to determine in isolation and without the participation or any representation of the child the "critically important" question whether a child will be deprived of the special protections and provisions of the Juvenile Court Act. It does not authorize the Juvenile Court, in total disregard of a motion for hearing filed by counsel, and without any hearing or statement or reasons, to decide—as in this case—that the child will be taken from the Receiving Home for Children and transferred to jail along with adults; and that he will be exposed to the possibility of a death sentence instead of treatment for a maximum, in Kent's case, of five years, until he is 21.

We do not consider whether, on the merits, Kent should have been transferred; but there is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel, without a statement of reasons. It is inconceivable that a court of justice dealing with adults, with respect to a similar issue, would proceed in this manner. It would be extraordinary if society's special concern for children, as reflected in the District of Columbia's Juvenile Court Act, permitted this procedure. We hold that it does not.

And, then, we stated concerning the *Kent* decision, at 345:

In our opinion, this decision is conclusive of the issue in this case of whether a judicial hearing is required by our statute in order to fulfill the procedural requirements of due process.

We do not now recede from these principles. Neither do we recede from our holding that an appropriate juvenile court order must be signed by a judge or court commissioner.

■ We have, however, upon reconsideration determined, in the light of our revised view of the "jurisdictional" aspect of the transfer of a cause from juvenile court

"session" to the "proper officers for trial under the provisions of the criminal code," that the granting of a new trial is not required in each and every case where there has been a faulty transfer.

It is our view that in those cases where it is demonstrated, in appropriate post conviction proceedings, that a transfer from juvenile court control has been faulty, proper relief can be afforded, in the ordinary case, by a de novo hearing before the superior court as to the propriety of the challenged transfer, *i.e.,* whether the facts before the juvenile "session" of the superior court in the first instance warranted and justified the transfer for criminal prosecution. If at the time of the hearing the convicted person still be under the age of 18 years, such hearing should be held before the superior court sitting in juvenile court session. If, however, the person has reached and passed his 18th birthday, he is amenable to the normal authority of the superior court and the hearing should be conducted by the superior court sitting, without a jury, in regular session. In either event the convicted person would be entitled to representation by counsel and to access to the pertinent investigatory reports of the juvenile court, and, at the conclusion of the hearing, the court would be required to make findings of fact and conclusions of law relative to any relevant and disputed issue between the prosecuting officials and the convicted person.

In the event it be determined, as a result of such hearing, that the initiating juvenile court transfer for criminal prosecution was appropriate under all of the circumstances, then the challenged conviction will stand unless intervening events have so prejudiced the constitutional rights of the convicted person as to compel a different result. On the other hand, should it be determined that the initiating transfer was inappropriate under all of the circumstances and that in fact the convicted person should have been dealt with as a juvenile, then the conviction should be set aside. If the conviction be set aside, and the convicted person be under the age of 18 years, and thus amenable to

juvenile court authority, his case should be remanded to juvenile court for proper disposition. Should he, however, be over the age of 18 years at the time the conviction be set aside, he is then amenable to prosecution as an adult, and a new trial should be granted to him. *State v. Ring*, 54 Wn.2d 250, 339 P.2d 461 (1959).

In keeping with the foregoing views, we accordingly modify our former decision in this case and remand the matter of the Superior Court for Jefferson County for a de novo hearing before that court as to the propriety of the original transfer of petitioner's case from the juvenile court.

We find no merit in the remaining assignments of error made by petitioner on his appeal but not discussed in our first opinion.

HILL, ROSELLINI, OTT, HUNTER, and HALE, JJ., concur.

DONWORTH, J. (dissenting in part)—I have no objection to the elimination of the word "jurisdiction" from our former opinion nor to the majority's general interpretation of the applicable statute and court procedure thereunder.

However, I do not concur in the result reached. The petitioner is now over 20 years of age and, under *State v. Ring*, 54 Wn.2d 250, 339 P.2d 461 (1959), and *State v. Melvin*, 144 Wash. 687, 258 Pac. 859 (1927), he is subject to trial upon the information filed in cause No. C-575 in the same manner as if he had been an adult when the alleged burglary was committed. I think that there is no present necessity to hold a hearing to determine nunc pro tunc whether he should or should not have been dealt with as a juvenile in September, 1962.

I would adhere to the result of our prior decision in this proceeding.

WEAVER, J., and BARNETT, J. Pro Tem., concur with DONWORTH, J.