[No. 63657-5. En Banc.]
Argued June 13, 1996. Decided July 11, 1996.

THE STATE OF WASHINGTON, *Petitioner*, v. THOMAS J. WERNER, *Respondent*.

486

*H. Steward Menefee, Prosecuting Attorney*, and *Gerald R. Fuller, Deputy*, for petitioner.

*Ingram, Zelasko & Goodwin*, by *Arthur A. Blauvelt III* and *Tamara J. Darst*, for respondent.

TALMADGE, J. — We are asked in this case to clarify the status of juvenile courts and juvenile court jurisdiction under Washington law, and the authority of superior court judges to issue arrest warrants for juveniles. While executing a warrant issued by the Pierce County Superior Court for the arrest of Leonard Dyer, a juvenile, the Aberdeen police discovered evidence of Thomas Werner's marijuana growing operation. Werner argues the evidence was inadmissible and must be suppressed because the warrant under which the police acted, issued by a superior court judge under the caption of the superior court, was illegal because Dyer was a juvenile. The trial court and Court of Appeals ultimately agreed that the Pierce County Superior Court lacked jurisdiction in Dyer's case and any evidence generated pursuant to the police's execution of the allegedly illegal warrant must be suppressed.

We hold the Pierce County Superior Court had jurisdiction over Leonard Dyer and had authority to issue an arrest warrant. We vacate the Grays Harbor County

Superior Court order of suppression, reverse the judgment dismissing the information, and remand the case for trial.

## ISSUES

1. Was the arrest warrant for Leonard Dyer a proper exercise of the jurisdiction of the Pierce County Superior Court?

2. Did the Grays Harbor Superior Court err in suppressing evidence gathered by the police at the residence of defendant Thomas Werner as a result of the execution of the Dyer warrant?

## FACTS

On January 25, 1993, pursuant to an information charging Leonard Dyer with the crime of assault in the second degree, a judge of the Pierce County Superior Court entered an Order for Bench Warrant directing the Pierce County Clerk to issue a bench warrant for Dyer's arrest. The bench warrant issued the same day.

On February 12, 1993, the Aberdeen police executed the bench warrant at the house in Aberdeen where Dyer was staying. Officer Slyter and Captain Delia knocked on the door of the residence at 6:30 a.m., and Dyer appeared. They informed Dyer they had a warrant for his arrest, placed him under arrest, and handcuffed him on the porch of the house. Dyer then asked if he could put some clothing on, as he was in his shorts. The police consented, provided Dyer allowed them to enter the house with him. Dyer agreed to allow the police into the house so he could dress.

Both police officers testified when they were in the living room they could smell growing marijuana. The smell was not apparent until they entered the house. Both officers testified that, but for having smelled marijuana while inside the residence, they had no interest in the residence

and no suspicion marijuana was growing there. After depositing Dyer at the Aberdeen Police Station, Officer Slyter and Captain Delia discussed the marijuana smell and what to do about it. Captain Delia told Officer Slyter to return to the house and ask Dyer's stepfather, Thomas Werner, who also lived there, about it. Slyter did so. Werner did not respond to Slyter's questions, and told Slyter to get a warrant if he wanted to search the house.

Slyter then went back to his vehicle and sat there for five or ten minutes, waiting. He observed Werner leave the house and hurriedly back up a van parked in front of the house into the driveway, leaving the back door of the van open. He then observed Werner running from the house and loading items into the back of the van. Later, as he approached the house, he recognized the items as potted marijuana plants. When Werner saw the police, he threw up his hands and said, "You guys got me. I give up." Report of Proceedings at 14.

Werner signed a consent to search form and Officer Slyter read him his *Miranda*[1] rights. As a result of the search of his house, the police arrested Thomas Werner. The Grays Harbor County Drug Task Force later seized 42 growing marijuana plants, each about 2 feet tall, from the van parked in the driveway. Werner subsequently admitted he had carried the plants from his house to the van. The Task Force also found a ledger book with various money amounts, records reflecting an ongoing marijuana grow since 1990, including information about harvest dates, trim dates, and budding dates.

Meanwhile, on the same day as Dyer's arrest, the Pierce County Prosecuting Attorney moved the Pierce County Superior Court to dismiss without prejudice the action against Dyer and to quash the bench warrant for his arrest. As Dyer was only 17 years old at the time, the Pierce County Prosecuting Attorney alleged he had erroneously applied to the adult superior court for the bench warrant

---

[1] *Arizona v. Miranda*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R. 3d 974 (1966).

for Dyer's arrest rather than to juvenile court. The trial court dismissed: "for the reason that the defendant is a juvenile and, therefore, this court does [n]ot have jurisdiction over him. I am referring this case to juvenile court." Findings of Fact nos. 9, 10; Clerk's Papers at 35.

On February 16, 1993, the State filed an information charging Werner with manufacturing a controlled substance and possession with intent to deliver a controlled substance. Werner moved to suppress all the evidence seized on the ground the arrest of Dyer was illegal because the superior court had no jurisdiction over juveniles, and thus the officers who entered Werner's home and smelled the marijuana were present there illegally; therefore, the evidence they subsequently seized from Werner constituted "fruit of the poisonous tree."

The Grays Harbor Superior Court held the suppression hearing on July 6, 1993. After hearing testimony from the officers and Werner, the court entered an Order Suppressing Evidence and Dismissing Information on July 26, 1993. The court concluded the bench warrant for Dyer's arrest was invalid because the Pierce County Superior Court lacked jurisdiction over the juvenile; the arrest of Dyer on February 12 was invalid; and everything the police did after smelling marijuana during the arrest of Dyer, including Werner's confession, was tainted by the invalid arrest. The court dismissed the information.

The State appealed, assigning error to the trial court's suppression order. At Division II, the State argued the Pierce County Superior Court had jurisdiction to issue Dyer's bench warrant, despite Dyer's being a juvenile; the "good faith" exception to the exclusionary rule applied even if there was no jurisdiction; and Werner's subsequent conduct and consent to search were intervening causes sufficient to remove the taint of illegality. The Court of Appeals affirmed, *State v. Werner*, 79 Wn. App. 872, 889, 906 P.2d 342 (1995), and we granted review.

## ANALYSIS

The trial court and the Court of Appeals each held the bench warrant, which was signed by a Pierce County Superior Court judge, was not valid because Dyer was a juvenile.

The trial court, in its oral decision suppressing the evidence, expressed some consternation at the paradoxical conclusion it reached:

> I realize that it sounds kind of funny, and I'm sitting here and I'm trying to rationalize why I can issue a warrant for a juvenile on one hand, but I can't on the other hand.

> I can issue if I'm sitting as a juvenile judge, but I can't if I'm sitting here as a superior court judge; I can if the piece of paper says in juvenile court, but I can't if the "in juvenile court" is missing. But that's the way it is, and there's probably a purpose, because we treat people who are charged as juveniles differently than we treat people who are charged as adults.

Report of Proceedings at 117.

The Court of Appeals reasoned the statute giving juvenile courts exclusive original jurisdiction over juveniles rendered the superior court bench warrant illegal. At the time of the trial court's decision, RCW 13.04.030 provided:

> The juvenile courts in the several counties of this state, shall have exclusive original jurisdiction over all proceedings:

> . . .

> (5) Relating to juveniles alleged or found to have committed offenses, traffic infractions, or violations as provided in RCW 13.40.020 through 13.40.230, as not or hereafter amended, unless:

> (a) The juvenile court transfers jurisdiction of a particular juvenile to adult criminal court pursuant to RCW 13.40.110.

The Court of Appeals said: "Dyer was seventeen when the adult division issued the warrant at issue here, and the juvenile division had not declined jurisdiction over him. Thus, the adult division lacked jurisdiction, and the warrant it issued was invalid." *Werner*, 79 Wn. App. at 879.

We believe the trial court and the Court of Appeals were too narrow in their focus. In looking only at RCW 13.04.030, the statutory conferral of "exclusive original jurisdiction over all proceedings" by the Legislature on the juvenile court, both courts overlooked a more fundamental authority. Superior court jurisdiction flows from constitutional mandate. Superior courts are courts of general jurisdiction and have original jurisdiction

> in all criminal cases amounting to felony, and in all cases of misdemeanor not otherwise provided for by law. . . . The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court[.]

WASH. CONST. art. IV, § 6 (amend. LXXXVII).

 The juvenile court is only a division of the superior court, not a separate constitutional court. RCW 13.04.021(1). Indeed, the creation of juvenile courts by statute long postdated the adoption of art. IV, § 6, in 1889. As Division II recently held, "The Legislature has not subtracted from the superior court's general jurisdiction and has not vested exclusive jurisdiction in any other court — the juvenile court is still a part of superior court." *State v. Pritchard*, 79 Wn. App. 14, 18, 900 P.2d 560 (1995), *review denied*, 128 Wn.2d 1017, *review granted in part*, 128 Wn.2d 1016, 912 P.2d 1016 (1996).

In *Dillenburg v. Maxwell*, 70 Wn.2d 331, 413 P.2d 940 (1966), *modified*, 422 P.2d 783, *cert. denied*, 386 U.S. 998, 87 S. Ct. 1320, 18 L. Ed. 2d 348 (1967), we held under the predecessor statute to RCW 13.04.030 that the juvenile court statutes did not subtract from the superior courts' general jurisdiction. Rather, the Legislature chose to "distribute and assign a phase of the business of the superior

court" and "prescribe the mode of procedure by which the superior court shall initiate, process and apply the remedies made available" for juveniles. *Id.* at 352-53. The adoption of the Basic Juvenile Court Act in 1977 did not alter this fundamental view of the juvenile court and, in fact, the Legislature confirmed it in adopting RCW 13.04.021(1). Thus, under Article IV, § 6, the Legislature has not vested jurisdiction exclusively in some court other than the superior court by enacting RCW 13.04.030 because the juvenile court is a division of the superior court, not a separate court.

The problem confronting us in analyzing this case is the lack of precision with which the Legislature, the courts below, and the parties have dealt with the term "jurisdiction."

■ "Jurisdiction means the power to hear and determine." *State ex rel. McGlothern v. Superior Court*, 112 Wash. 501, 505, 192 P. 937 (1920). "In order to acquire complete jurisdiction, so as to be authorized to hear and determine a cause or proceeding, the court necessarily must have jurisdiction of the parties thereto and of the subject matter involved." *State ex rel. New York Casualty Co. v. Superior Court*, 31 Wn.2d 834, 839, 199 P.2d 581 (1948). "There are in general three jurisdictional elements in every valid judgment, namely, jurisdiction of the subject matter, jurisdiction of the person, and the power or authority to render the particular judgment." *Marriage of Little*, 96 Wn.2d 183, 197, 634 P.2d 498 (1981).

■ The Pierce County Superior Court had subject-matter jurisdiction over Dyer for the crime Dyer allegedly committed in Pierce County, under both WASH. CONST. art. IV, § 6, and RCW 2.08.010 (setting forth the jurisdiction of superior courts), even where Dyer's case was improperly captioned as an adult court case. Personal jurisdiction stems from RCW 9A.04.030(1), which establishes state criminal jurisdiction over persons who commit crimes in the state. *State v. Breedlove*, 79 Wn. App. 101, 111, 900 P.2d 586 (1995) (Pierce County Superior Court

had both subject matter and personal jurisdiction over defendant who was arrested in King County for murder committed in Pierce County).

By statute, however, only the juvenile division of the Pierce County Superior Court had the power to hear and determine the case against Dyer, and to render judgment against him. The issue, then, is not whether the adult division of the Pierce County Superior Court had the power to hear and determine the charges against Dyer. It did not. The real issue is whether the adult division had the power to issue a warrant to arrest Dyer.

The power of the superior court to issue warrants is broad and finds its roots in our state constitution. Article IV, § 6 states the process of superior courts "shall extend to all parts of the state." *State v. Davidson*, 26 Wn. App. 623, 627-28 n.3, 613 P.2d 564 (under art. IV, § 6, superior court has inherent power to issue misdemeanor warrants even in the absence of a statute), *review granted*, 94 Wn.2d 1020 (1980), *review dismissed*, 95 Wn.2d 1026 (1981). RCW 2.20.010, first enacted in 1891, provides: "A magistrate is an officer having power to issue a warrant for the arrest of a person charged with the commission of a crime."[2] Superior and district court judges are defined as magistrates, RCW 2.20.020(3), but juvenile court judges are not separately referenced. Thus, superior and district court judges have the statutory authority to issue an arrest warrant for a felon, even though the district courts lack the jurisdiction to try such felons. *State v. Blanchey*, 75 Wn.2d 926, 454 P.2d 841 (1969), *cert. denied sub nom. Blanchey v. Washington*, 396 U.S. 1045, 90 S. Ct. 694, 24 L. Ed. 2d 688 (1970). *See Thornton v. State*, 157 Ga. App. 75, 276 S.E.2d 125 (1981) (juvenile court judge had authority to issue arrest warrant for adult). Here, the Pierce County Superior Court judge had the legal authority to issue the warrant, both on the basis of art. IV, § 6 and RCW 2.20.010.

---

[2]Both the superior court and juvenile court rules provide for the issuance of arrest warrants. CrR 2.2(a); JuCR 7.5(a). These rules do not limit the statutory power of all magistrates to issue arrest warrants for persons accused of committing a crime.

Furthermore, the Pierce County Superior Court judge issuing the bench warrant for Dyer's arrest fulfilled the fundamental constitutional requisite in impartially assessing whether the State demonstrated probable cause for Dyer's arrest. The United States Supreme Court has said:

> The warrant traditionally has represented an independent assurance that a search and arrest will not proceed without probable cause to believe that a crime has been committed and that the person or place named in the warrant is involved in the crime. Thus, an issuing magistrate must meet two tests. He must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search.

*Shadwick v. City of Tampa*, 407 U.S. 345, 350, 92 S. Ct. 2119, 32 L. Ed. 2d 783 (1972). "In the issuance of a conventional search warrant, a principal protection of a citizen's Fourth Amendment rights is the neutral and detached magistrate interposed between the person requesting the search warrant and its issuance by the court." *State v. O'Neill*, 103 Wn.2d 853, 874-75, 700 P.2d 711 (1985); *City of Seattle v. McCready*, 123 Wn.2d 260, 272, 868 P.2d 134 (1994) (warrant must be issued by a magistrate with the legal authority to issue it).[3]

Werner makes no argument Dyer's arrest warrant did not receive the benefit of a probable cause determination by a neutral and detached magistrate. Thus, except for the failure of the warrant to recite it was issued by the juvenile division of the Pierce County Superior Court, Dyer's arrest warrant contained no arguable constitutional infirmity. As the Supreme Court has said, moreover, "The substance of the Constitution's warrant requirements does not turn on the labeling of the issuing party." *Shadwick*, 407 U.S. at 350.

---

[3]This is not a case like *State v. Canady*, 116 Wn.2d 853, 809 P.2d 203 (1991), where the warrant was issued by a pro tempore judge of an invalidly created municipal court. That judge had no legal capacity to issue the warrant.

■ The only remaining argument for Werner is that the creation of juvenile courts by statute somehow constrained the power of a superior court to issue a warrant for Dyer's arrest. That argument fails. This Court has resolutely resisted legislative attempts to restrict its constitutional authority:

> Any legislation, therefore, the purpose or effect of which is to divest, in whole or in part, a constitutional court of its constitutional powers, is void as being an encroachment by the legislative department upon the judicial department. . . . [T]he courts are not required to recognize a legislative restriction which has the effect of depriving them of a constitutional grant or of one of their inherent powers. What the legislature has not given, it cannot take away.

*Blanchard v. Golden Age Brewing Co.*, 188 Wash. 396, 415, 418, 63 P.2d 397 (1936) (rejecting legislative attempt to abolish or abridge the power of the superior court to issue injunctions). "The power to regulate the practice and procedure of the superior courts is one which is inherently judicial. That judicial power may not be abrogated or restricted by any legislative act." *City of Spokane v. J-R Distributors, Inc.*, 90 Wn.2d 722, 727, 585 P.2d 784 (1978) (citations omitted).

In summary, the plenary constitutional and statutory authority of superior court judges under WASH. CONST. art. IV, § 6 and RCW 2.20.010, respectively, to issue arrest warrants was not restricted by the legislation creating juvenile courts. Moreover, because the arrest warrant fulfilled the requirements of the Fourth Amendment, the police entry into Werner's house was legal. The evidence the police gathered at the time of the arrest and afterward was therefore not in violation of Werner's constitutional rights, and the trial court should not have suppressed it.[4]

---

[4]The State has also argued the good faith exception to the exclusionary rule and intervening cause. In light of our disposition of this case, we reach neither issue and therefore neither expressly approve nor disapprove the Court of Appeals' analysis of these questions.

## CONCLUSION

It was not improper for a Pierce County Superior Court judge to issue a warrant for Dyer's arrest under a Pierce County Superior Court caption, even if Dyer was a juvenile and even if the arrest warrant did not specify Dyer was to be tried by the juvenile court after his arrest. There was probable cause for Dyer's arrest, and the warrant was issued by an impartial magistrate with appropriate legal authority. Dyer's arrest, therefore, did not traduce his constitutional rights. That being the case, the presence of the police in Werner's residence on the day of Dyer's arrest was proper, and the Grays Harbor County Superior Court should not have suppressed evidence subsequently discovered of Werner's marijuana growing operation.

We vacate the trial court's suppression order, reverse the judgment of dismissal, and remand this case to the Grays Harbor County Superior Court for trial.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, and SANDERS, JJ., concur.