243 P.3d 160 (2010)
In re the DEPENDENCY OF E.H., a minor child.
Nos. 39641-6-II, 39731-5-II.
Court of Appeals of Washington, Division 2.
September 21, 2010.
Publication Ordered December 2, 2010.
*161 Catherine E. Glinski, Attorney at Law, Manchester, WA, Elaine L. Winters, Washington Appellate Project, Seattle, WA, for Appellant.
Peter Everett Kay, Office of the Attorney General, Tacoma, WA, for Respondent.
Travis Stearns, Washington Defender Association, Jana L. Heyd, Attorney at Law, Seattle, WA, for Amicus Curiae on behalf of WA Defender Assoc & Scrap.
Deborah Perluss, Northwest Justice Project, Seattle, WA, John Charles Purbaugh, Northwest Justice Project, Tacoma, WA, for Amicus Curiae on behalf of Nw Justice Project.
PENOYAR, C.J.
¶ 1 BD and TH are the indigent parents of EH,[1] a seven year-old boy. The juvenile court found EH dependent as to both parents over four years ago. At the recommendation of the Department of Social and Health Services (the Department), the juvenile court commissioner ordered a permanency plan of nonparental custody for EH and granted concurrent jurisdiction to the family court to hear the nonparental custody action that KH, EH's half-sister and temporary custodian, had filed. The juvenile court judge revised the concurrent jurisdiction order, specifying that the family court would also decide the dependency-related permanency planning issue of whether to return EH to one of the parents' homes. We granted the parents' motion for discretionary review to determine whether the juvenile court's grant of concurrent jurisdiction deprived them of their right to appointed counsel in dependency proceedings. We hold that BD and TH, as indigent parents, have a statutory right to appointed counsel on remand because the family court must determine whether EH should be returned home, which is a permanency planning issue that stems from EH's dependency. We affirm the concurrent jurisdiction order and remand to the family court for a hearing on the merits with appointed counsel.

FACTS
¶ 2 On October 29, 2002, BD gave birth to EH while incarcerated. In August 2005, law enforcement removed EH from TH's custody after the child's paternal grandmother observed EH's ankles taped together while TH slept on the couch beside him. TH told a counselor that he had taped his son's ankles together as part of a game and in order to calm him down for a nap. At TH's request, the Department placed EH in KH's care; KH is TH's adult daughter and EH's half-sister. EH has lived with KH and her family since August 2005.

I. Dependency
¶ 3 A few days after the Department removed EH from TH's care, it filed a dependency petition. BD, whose whereabouts were unknown, did not appear at the initial dependency hearing, and the juvenile court found EH dependent as to BD based on her neglect and inability to adequately care for him. See former RCW 13.34.030(5)(b), (c) (Laws of 2003, ch. 227, § 2). The Department and TH entered an agreed order of dependency, finding that EH had no parent capable of adequately caring for him. See former RCW 13.34.030(5)(c).
¶ 4 BD later appeared in the dependency. BD and TH do not live together. During the dependency, both parents engaged in court-ordered services and visited EH. In 2007, two child and family therapists recommended that EH permanently remain in KH's care. In a 2008 report, the guardian ad litem concurred that this would be in EH's best interests. But the psychologist who performed BD's psychological evaluation concluded in 2007 that returning EH to BD's home was in EH's best interests.

II. Permanency Plan
¶ 5 Originally, the Department planned to return EH home to his parents' care. Subsequently, the Department proposed adoption as the primary goal of EH's permanency *162 plan, and the Department filed a termination petition. On December 16, 2008, the juvenile court dismissed the termination petition.
¶ 6 At the April 2009 dependency review hearing, the Department proposed nonparental custody with KH as the primary goal of the permanency plan. The Department informed the juvenile court commissioner that it had "consulted with [KH and her husband JH], who decided they would be willing and able to pursue a third-party custody action." Clerk's Papers (CP) at 750. The Department stated that EH viewed KH's family as his own and that KH had provided for EH's needs during the last four years. The Department argued that termination of BD's and TH's parental rights was no longer appropriate because EH had developed a relationship with each of them through extended visitation. The Department therefore proposed an alternate goal of return home to one of the parents. The parents opposed nonparental custody and requested that the juvenile court return EH to their respective homes.
¶ 7 After argument, the juvenile court commissioner ordered nonparental custody with KH to be the primary goal of EH's permanency plan. The commissioner stated that BD had fully complied with her court-ordered services, and that TH had partially complied with his court-ordered services. Despite the parents' progress, however, the commissioner did not approve the Department's proposed alternative goal to return EH to the home of one of his parents, stating that it was "simply too late" to consider return home as a viable alternative:
This action regarding [EH] was commenced August of 2005. That's three years and almost nine months ago, over half of [EH's] life ago. And so very bluntly, I am looking at this case from [EH's] perspective.... I think the Court and the system, generally, owes everybody an apology, to some extent. Because this case is probably one of the picture postcards of how not to do a dependency.
CP at 767, 770. The commissioner also entered an order granting concurrent jurisdiction "to Kitsap County Superior Court for the purpose of going forward on a Nonparental Custody Action initiated by [KH] and [JH]." CP at 611. The commissioner agreed with the Department that termination and adoption were no longer appropriate permanency plans because BD had been "very committed, very persistent" and because TH was "doing better." CP at 771.

III. Motion to Revise
¶ 8 BD and TH moved to revise the commissioner's permanency planning and concurrent jurisdiction orders. The parents objected to the concurrent jurisdiction order, in part, because "indigent parents are not appointed legal counsel" in nonparental custody actions and had no right to public funds to assist them in their defense. CP at 780.
¶ 9 On July 15, 2009, the juvenile court[2] denied the parents' motions to revise. The juvenile court noted that "based on the record... there is significant evidentiary support for a Third Party Custody action" and stated:
[T]his court has serious concerns on a procedural basis that going forward with only a Third Party Custody action will result in permanence for [EH]. The concern is not based on the merits of such an action but on the possibility that [KH and JH] may not be able to meet their clear burden of demonstrating "actual detriment" to EH if placed with one of his parents. This would result in the Department having to propose another permanent plan in the Dependency action and would prolong a permanent placement for [EH] through additional litigation.
CP at 922. Because of these concerns, the juvenile court ordered that "concurrent jurisdiction be granted to each parent to pursue the alternate plan of return home." CP at 922. The juvenile court explained, "Only by having all contested Title 26 matters resolved in one trial can permanence be achieved for [EH] and the Dependency action dismissed." CP at 922-23. Thus, the juvenile court ordered the family court to hear a dependency issuethe possibility of EH's return home to one of his parentsin the event that the *163 family court denied KH's nonparental custody petition. Additionally, the juvenile court revised the findings with regard to TH, finding that TH was in full compliance with court-ordered services and making progress.

IV. Motion for Discretionary Review
¶ 10 BD and TH separately moved for discretionary review. RAP 2.3(a).[3] A commissioner of this court consolidated the motions and granted discretionary review to determine whether the juvenile court erred by granting concurrent jurisdiction to the superior court to hear the nonparental custody action rather than retaining jurisdiction under RCW 13.34.145(8). The commissioner denied discretionary review on all other matters.

ANALYSIS

I. Jurisdictional issues
¶ 11 The parents contend that the juvenile court erred by entering the concurrent jurisdiction orders. We disagree.
¶ 12 Jurisdiction is "the power to hear and determine." State v. Werner, 129 Wash.2d 485, 493, 918 P.2d 916 (1996) (quoting State ex rel. McGlothern v. Superior Court, 112 Wash. 501, 505, 192 P. 937 (1920)). Superior court jurisdiction flows from constitutional mandate. Werner, 129 Wash.2d at 492, 918 P.2d 916. Superior courts have original jurisdiction over "all cases and ... proceedings in which jurisdiction shall not have been by law vested exclusively in some other court." Wash. Const. art. IV, § 6. The power to regulate the practice and procedure of the superior courts is an inherently judicial power that may not be abrogated or restricted by any legislative act. Werner, 129 Wash.2d at 496, 918 P.2d 916 (quoting City of Spokane v. J-R Distribs., Inc., 90 Wash.2d 722, 727, 585 P.2d 784 (1978)). As our Supreme Court has long recognized:
Any legislation ... the purpose or effect of which is to divest, in whole or in part, a constitutional court of its constitutional powers, is void as being an encroachment by the legislative department upon the judicial department.... [T]he courts are not required to recognize a legislative restriction which has the effect of depriving them of a constitutional grant or of one of their inherent powers. What the legislature has not given, it cannot take away.
Werner, 129 Wash.2d at 496, 918 P.2d 916 (quoting Blanchard v. Golden Age Brewing Co., 188 Wash. 396, 415, 418, 63 P.2d 397 (1936)).
¶ 13 The creation of juvenile courts by statute long postdated the adoption of article IV, section 6 in 1889 and did not subtract from superior courts' general jurisdiction. Werner, 129 Wash.2d at 492, 918 P.2d 916. Rather, the legislature's decision to create juvenile courts was a choice to "distribute and assign a phase of the business of the superior court" and "prescribe the mode of procedure by which the superior court shall initiate, process and apply the remedies made available" for juveniles. Werner, 129 Wash.2d at 492-93, 918 P.2d 916 (quoting In re Writ of Habeas Corpus of Dillenburg, 70 Wash.2d 331, 352-53, 422 P.2d 783 (1967)).[4]
¶ 14 The legislature has enacted numerous statutes to "distribute and assign" superior court matters to juvenile courts and family courts. While these statutes often speak of "jurisdiction" they are not jurisdictional because they are not the source of the superior courts' power to hear and determine the issues before them. Article IV, section 6 of the state constitution is the source of that power. What the statutes actually do is distribute certain cases to specific divisions of the superior court. Thus, juvenile courts have "exclusive original jurisdiction" over dependent children.[5] RCW 13.04.030(1)(b). Family *164 courts have "jurisdiction" over any title 26 RCW proceeding, including proceedings related to parenting plans, child custody, visitation, support, and property distribution. RCW 26.12.010. Importantly, however, juvenile courts and family court are not separate courts but, rather, are divisions of the superior court. RCW 13.04.021(1); RCW 26.12.010, .020; see also Werner, 129 Wash.2d at 496, 918 P.2d 916.
¶ 15 The legislature has also enacted concurrent "jurisdiction" statutes to facilitate the transfer of cases between juvenile and family courts. Thus, the family court has concurrent original "jurisdiction" with the juvenile court over dependency proceedings if the county's superior court judges authorize concurrent "jurisdiction." RCW 13.04.030(2); see also RCW 26.12.010. Similarly, the juvenile court has concurrent original "jurisdiction" with the family court over nonparental custody actions as provided for in RCW 13.34.155. RCW 13.04.030(3).[6] RCW 13.34.155(1) states, in relevant part:
The court hearing the dependency petition may hear and determine issues related to chapter 26.10 RCW in a dependency proceeding as necessary to facilitate a permanency plan for the child or children as part of the dependency disposition order or a dependency review order or as otherwise necessary to implement a permanency plan of care for a child. The parents, guardians, or legal custodian of the child must agree, subject to court approval, to establish a permanent custody order.[7]
As the parents appear to acknowledge here, RCW 13.34.155 does not apply because there has been no agreement to establish a permanent custody order.
¶ 16 The parents rely on RCW 13.34.145(8) to support their contention that the juvenile court should have retained jurisdiction to hear and determine the nonparental custody action. That statute reads in relevant part:
The juvenile court may hear a petition for permanent legal custody when: (a) The court has ordered implementation of a permanency plan that includes permanent legal custody; and (b) the party pursuing the permanent legal custody is the party identified in the permanency plan as the prospective legal custodian.
RCW 13.34.145(8). The juvenile court could have exercised its discretion to hear the nonparental custody petition under this subsection because (1) the juvenile court ordered implementation of nonparental custody as the permanency plan; and (2) KH, the prospective custodian, is pursuing nonparental custody. The language of this subsection, however, is permissive rather than mandatory. Therefore, the juvenile court did not err by failing to exercise its power under RCW 13.34.145(8) to hear the nonparental custody action.

II. Right to Counsel Under RCW 13.34.090
¶ 17 The parents contend that they have a right to appointed counsel under RCW 13.34.090. RCW 13.34.090 reads, in relevant part:
(1) Any party has a right to be represented by an attorney in all proceedings under this chapter, to introduce evidence, to be heard in his or her own behalf, to examine witnesses, to receive a decision based solely on the evidence adduced at the hearing, and to an unbiased fact finder.
(2) At all stages of a proceeding in which a child is alleged to be dependent, the child's parent, guardian, or legal custodian has the right to be represented by counsel, and if indigent, to have counsel appointed for him or her by the court.
Unless waived in court, counsel shall be provided to the child's parent, guardian, or legal custodian, if such person (a) has appeared in the proceeding or requested the court to appoint counsel and (b) is financially unable to obtain counsel because of indigency.
*165 (Emphasis added). We agree that the parents are entitled to appointed counsel on remand.[8]
¶ 18 Here, when the juvenile court denied the parents' motion for revision, it also granted concurrent jurisdiction to the family court to consider "the alternate plan of return home." CP at 922. Chapter 13.34 RCW designates the "[r]eturn of the child to the home of the child's parent, guardian, or legal custodian" as an option for the child's permanency plan. RCW 13.34.136(2)(a).[9] Accordingly, in a consolidated proceeding to consider a nonparental custody petition together with a permanency plan of return home, the "return home" portion of the proceeding is a "proceeding[] under [chapter 13.34 RCW]" that gives the parents a right to counsel under RCW 13.34.090(1). Additionally, because the "return home" portion of the proceeding is a "stage[] of a proceeding in which a child is alleged to be dependent," the parents have a right to appointed counsel under RCW 13.34.090(2). In this case, the nonparental custody action is inextricably linked with the dependency issue of whether EH's return home to either parent is appropriate. Therefore, BD and TH, as indigent parents, are entitled to appointed counsel under RCW 13.34.090(2) for the family court proceedings.
¶ 19 We affirm the concurrent jurisdiction order and remand to the family court for a hearing on the merits with appointed counsel. We also reject BD's request that the juvenile court commissioner and judge who entered the challenged orders be precluded from hearing the case on remand.
We concur: ARMSTRONG and WORSWICK, JJ.
NOTES
[1] We refer to all parties by their initials in order to protect EH's anonymity.
[2] A juvenile court judge reviewed the commissioner's rulings.
[3] RAP 2.3(a) permits a party to seek discretionary review of "any act of the superior court not appealable as a matter of right," unless a statute or court rule prohibits such review.
[4] The Werner court quotes from the portion of the Dillenburg opinion that our Supreme Court issued following a motion for reconsideration. See Dillenburg, 70 Wash.2d at 352-53, 422 P.2d 783. Our parallel citation, therefore, is to the modified opinion. The original opinion appears at 70 Wash.2d 331, 413 P.2d 940.
[5] However, as our Supreme Court has noted, this "exclusive original jurisdiction" does not vest jurisdiction in "some other court" for purposes of article IV, section 6 of the Washington Constitution. See Werner, 129 Wash.2d at 492, 918 P.2d 916 (quoting State v. Pritchard, 79 Wash. App. 14, 18, 900 P.2d 560 (1995)).
[6] In 2009, the legislature amended RCW 13.04.030(3) in a manner that does not affect the present analysis. See Laws of 2009, ch. 526, § 1.
[7] We note that two recent amendments to RCW 13.34.155each made without reference to the otherdo not affect the present analysis. See Laws of 2009, ch. 526, § 2; Laws of 2009, ch. 520, § 31.
[8] Because we resolve this case on statutory grounds, we need not address the parents' arguments that they have a right to appointed counsel under the due process clauses of the state and federal constitutions. See U.S. Const., amend. XIV, § 1; Wash. Const. art. I, § 3; see also In re Dependency of J.B.S., 123 Wash.2d 1, 7, 863 P.2d 1344 (1993) (stating that a court need not reach a party's constitutional arguments if it can resolve the case on statutory grounds).
[9] The legislature's recent amendment to this subsection does not impact our analysis. See Laws of 2009, ch. 520, § 28.