**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of:<br><br>the Custody of A.N.D.M. | No. 82779-1-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

DÍAZ, J. — As part of an agreed parenting plan, a mother twice asked the superior court to enter findings regarding her daughter's eligibility for "special immigrant juvenile status" and twice it refused, the first time for procedural reasons and the second time on the merits. Although the case is now moot, the mother, who is the appellant here, asks this court to reverse each decision, in part, to clarify how a superior court, jurisdictionally and substantively, should resolve such a request. Finding these issues of continuing and substantial public interest, we accept that invitation and reverse.

## I. BACKGROUND

Appellant Ada Moreira Mencia (Moreira) immigrated from Honduras to this country in approximately 2014, leaving her then 10-year-old daughter,

No. 82779-1-I/2

ANDM, in the care of Moreira's mother. Approximately five years later, ANDM immigrated to this country, was detained by immigration authorities, and released to her father who was living in Texas.

ANDM lived with her father for approximately three months. This was the first contact ANDM had with her father since she was born, as he abandoned her at that time, never provided any support, and never made any effort to communicate with her despite the fact that ANDM sometimes did not have enough to eat in Honduras. Even when she briefly lived with him, ANDM's father neglected to provide enough food, care or affection to her and she was enrolled in school for only two weeks in those three months.

ANDM reunited with her mother in March 2019, who alone has cared for her. Since that time, ANDM's father has not tried to contact her, and has not provided any financial or emotional support.

The foregoing facts are undisputed and were sworn to be true under penalty of perjury in the following case.

As part of an uncontested petition for a parenting plan, on November 3, 2020, Moreira moved the Snohomish County Superior Court to "assume jurisdiction to determine that a parenting plan is necessary and to make other relevant findings" (Motion), so that ANDM could seek special immigrant juvenile status (SIJS) for her daughter. Specifically, Moreira moved the court

2

No. 82779-1-I/3

to find that the child was under 21, was unmarried, had been abandoned by her father, and that it would not be in her best interests to be returned to Honduras.

At the first hearing on the Motion on December 8, 2020, a family court commissioner declined to hear the Motion and referred it to the juvenile division. The commissioner explained that "this matter cannot be heard here . . . Commissioners are without authority to hear these matters." Counsel for Moreira argued that, "to the extent the Court has jurisdiction over family law matters, specifically petitions for parenting plans, the Court has jurisdiction over this matter." The commissioner clarified that "Snohomish County Superior Court has taken the position that these matters are to be heard by the sitting judge in juvenile court."

On March 18, 2021, a different commissioner signed a final order for a parenting plan. In the parenting plan entered that same day, the commissioner found, in pertinent part, that ANDM's father abandoned her, neglected his parental duties, and had few or no emotional ties with her. In turn, the commissioner prohibited his contact with her and invested all matters involving her care to her mother.

Moreira rescheduled the Motion in the juvenile court for April 16, 2021. After enumerating the discrete findings she wished the court to make, counsel

3

No. 82779-1-I/4

for Moreira stated that she was "not asking the Court to grant the child any sort of immigration relief. We are simply asking the Court to make these findings so that the child may be eligible for relief in immigration court."

The juvenile court judge presiding over the matter immediately responded:

> I am not inclined to sign these orders. [ANDM]'s mother is available to parent her, and apparently has always been available to parent her. There's an allegation if [ANDM] is returned to Honduras, that she wouldn't be able to live with anyone. But there is no explanation about why [ANDM]'s mother cannot return to Honduras with her.

After "grant[ing] the fact that [ANDM]'s father has not been involved in her life, and has essentially abandoned her," the judge continued:

> When [ANDM] left Honduras, she wasn't fleeing any type of abandonment, abuse, threats, or anything. . . . There's no allegations that being returned to Honduras is detrimental to her health or well-being. And, in fact, apparently her mother can return to Honduras with her.

As to the absence of a claim of abuse in Honduras, the court explained its reasoning as follows: "For a child to be eligible, there's got to be an allegation that returning to the home country puts them at risk, which necessarily means that there's got to be some risk there as a reason to flee."

The court denied the motion, finding that the "facts of this case do not rise, in my opinion, to what is contemplated under the federal law." Appellant then moved for reconsideration, which was denied.

4

No. 82779-1-I/5

Later that year, ANDM filed a vulnerable youth guardianship petition and, through that separate proceeding, a judge entered modified SIJS findings, allowing ANDM to prepare her SIJS petition.

Concurrently, this appeal followed. Moreira asserts the family court commissioner erred in declining to hear the Motion, and the juvenile court judge erred in refusing to enter the SIJS findings. A group of six entities, granted amicus curiae status (amici), filed a joint brief in support of Moreira. There is no brief in opposition.

## II.     DISCUSSION

### A.  Overview of the SIJS

In 1990, Congress created the SIJS designation as a form of humanitarian relief for abused, abandoned, or neglected immigrant foster children. Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978, 5005 (codified at 8 U.S.C. § 1101(a)(27)(J)). In 1994, Congress expanded the scope of SIJS and provided potential SIJS relief to any immigrant child "legally committed to, or placed under the custody of, a[] [state] agency or department," such as juvenile offenders. Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 219, 108 Stat. 4305, 4316 (codified at 8 U.S.C. § 1101(a)(27)(J)(i)).

In 2008, Congress further expanded the statute, making SIJS potentially available to all immigrant children who have suffered abandonment, abuse,

5

No. 82779-1-I/6

neglect, or a similar act by a parent, even if they reside with the other parent. William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 235(d)(1)(A), 122 Stat. 5044, 5079 (codified at 8 U.S.C. § 1101(a)(27)(J)(i)). In other words, Congress no longer limited potential eligibility to those in foster care or in state custody, but extended it to children who suffered abuse, under certain conditions.

First, the "child" must be (1) unmarried and (2) under 21 years of age at the time the petition is filed. 8 U.S.C. §§ 1101(b)(1). Additionally, such a child is eligible, in pertinent part, *only if* also:

> (3) they were "legally committed to, or placed under the custody of, . . . an individual or entity appointed by a State or juvenile court located in the United States";
>
> (4) their "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law"; and
>
> (5) they have "been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence."

8 U.S.C. § 1101(a)(27)(J)(i)-(ii). In other words, somewhat uniquely, Congress designated state courts to make various factual determinations in order to be eligible for SIJS relief; namely, as most relevant here, that a legal placement by a court occurred, that the child was abandoned, and that it is not in the child's best interests to be returned to their country of origin.

6

No. 82779-1-I/7

As federal courts have explained, these inquiries are "within the traditional expertise of the state courts, and [thus] the SIJ statute, not surprisingly, assigns this fact-finding task to the state court." Moreno Galvez v. Cuccinelli, 387 F. Supp. 3d 1208, 1216 (W.D. Wash. 2019); see also Perez-Olano v. Gonzalez, 248 F.R.D. 248, 265 (C.D. Cal. 2008) ("The SIJ statute affirms the institutional competence of state courts as the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child's best interests.").

Finally, pursuant to 8 C.F.R. § 204.11(a), a "juvenile court" is "a court located in the United States having jurisdiction *under State law* to make judicial determinations about the *custody and care of juveniles*." (Emphasis added.) In other words, the key feature of a "juvenile court" under federal law is whether it possesses the power under state law to "make judicial determinations about the custody and care of juveniles."

B. Applicable State Law

Washington state law assigns the ability to make "determinations about the custody and care of juveniles" to the superior courts, in various ways.

First, RCW 26.12.010 provides:

Each superior court shall exercise the jurisdiction conferred by this chapter and while sitting in the exercise of such jurisdiction shall be known and referred to as the "family court." A family court proceeding under this chapter is: (1) Any proceeding under this title or any proceeding in which the family court is requested to adjudicate or enforce the rights of the parties or their children regarding the

7

No. 82779-1-I/8

> determination or modification of parenting plans, child custody,
> visitation, or support, or the distribution of property or obligations, or
> (2) concurrent with the juvenile court, any proceeding under Title 13
> or chapter 28A.225 RCW.

In other words, every superior court may conduct a family court proceeding, which includes, inter alia, issues of child custody and their care. RCW 26.12.010; see, e.g., RCW 26.09.191(2)(a) (providing a superior court authority to impose restrictions on residential time). When a superior court exercises such jurisdiction, it happens to be referred to as "family court." Id.

Next, RCW 13.04.021(1) provides, that a "juvenile court shall be a division of the superior court." A juvenile court has "exclusive original jurisdiction" over a broad range of matters, including, in pertinent part, interstate compacts "on the placement of children" and "on juveniles;" allegations of dependency on the state; "termination of a parent and child relationship;" approval of "out-of-home placement;" and all juvenile offender matters, which can result in confinement. RCW 13.04.030(1)(a)-(f).

Finally, pursuant to RCW 13.04.030(3), a "juvenile court shall have concurrent original jurisdiction with the family or probate court over minor guardianship proceedings under chapter 11.130 RCW and parenting plans or residential schedules."

Furthermore, "juvenile courts are properly understood, jurisdictionally, as a separate division of the superior courts" and "not separate and distinct from

8

No. 82779-1-I/9

superior courts." State v. Posey, 174 Wn.2d 131, 140-141, 272 P.3d 840 (2012) (citing State ex rel. Campbell v. Superior Court for King County, 34 Wn.2d 771, 775, 210 P.2d 123 (1949); Dillenburg v. Maxwell, 70 Wn.2d 331, 352-53, 422 P.2d 783 (1967); State v. Werner, 129 Wn.2d 485, 492, 918 P.2d 916 (1996), abrogated on other grounds; In re Boot, 130 Wn.2d 553, 561 n. 4, 925 P.2d 964 (1996)). As with the "family court" designation, our "legislature 'simply authorized the characterization of the superior court, or a 'session' thereof, as a 'juvenile court'" when processing certain cases." State v. Burke, 12 Wn. App. 2d 943, 949, 466 P.3d 1147 (2020) (citing Dillenburg, 70 Wn.2d at 352).

As to the powers of the relevant commissioners under Washington state law, constitutional "court commissioners" have "authority to perform like duties as a judge of the superior court at chambers, subject to revision by such judge . . . and to perform such other business connected with the administration of justice as may be prescribed by law." WASH. CONST. art. 4, § 23.

Among those powers prescribed by law for relevant "statutory" commissioners, family law commissioners are authorized to . . .

> (3) exercise all the powers and perform all the duties of [constitutional] court commissioners; . . .

> (5) provide supervision over the exercise of its jurisdiction as the judge of the family court may order;

9

No. 82779-1-I/10

> (6) cause the orders and findings of the family court to be entered in the same manner as orders and findings are entered in cases in the superior court . . .

RCW 26.12.060.

And juvenile court commissioners

> shall have the power, authority, and jurisdiction, concurrent with a juvenile court judge, to hear all cases under this chapter and to enter judgment and make orders with the same power, force, and effect as any judge of the juvenile court, subject to motion or demand by any party within ten days from the entry of the order or judgment by the court commissioner as provided in RCW 2.24.050.

RCW 13.04.021(1).

C. Mootness

As stated above, after the two hearings at issue here, the court entered modified SIJS findings, allowing ANDM to prepare her SIJS petition and obtain the order she sought. Further, ANDM has since turned 18, which means she is no longer subject to the parenting plan which underlaid the motion. see RCW 26.12.010. In turn, this case may be moot as the court can no longer provide effective relief as to the Motion; e.g., order the court to issue SIJS findings as part of the family law matter. In re Marriage of Horner, 151 Wn.2d 884, 891, 93 P.3d 124 (2004) ("A case is moot if a court can no longer provide effective relief.") (citing Orwick v. City of Seattle, 103 Wn.2d 249, 253, 692 P.2d 793 (1984)).

10

No. 82779-1-I/11

Nonetheless, Moreira and amici urge this court to address the merits of this case, as it "is part of a larger pattern and presents issues of continuing and substantial public interest." They are correct.

"As a general rule, this court will not review a moot case." Horner, 151 Wn.2d at 891. "However, this court may review a moot case if it presents issues of continuing and substantial public interest." Id. (citing Westerman v. Cary, 125 Wn.2d 277, 286, 892 P.2d 1067 (1994)). "In deciding whether a case presents issues of continuing and substantial public interest:

> Three factors in particular are *determinative*: (1) whether the issue is of a public or private nature; (2) whether an authoritative determination is desirable to provide future guidance to public officers; and (3) whether the issue is likely to recur. A fourth factor may also play a role: the level of genuine adverseness and the quality of advocacy of the issues. Lastly, the court may consider the 'likelihood that the issue will escape review because the facts of the controversy are short-lived'.

Id. at 891-92 (citing Westerman, 125 Wn.2d at 286-87)) (emphasis added).

As to the first two "determinative" factors: here, a proper application of the jurisdictional laws, as reflected in a superior court's organizational approach, when handling SIJS motions are issues of a public nature. In re Dependency of Z.J.G., 196 Wn.2d 152, 161 n.7, 471 P.3d 853 (2020)). When a court improperly divests itself from jurisdiction, it is tantamount to usurping jurisdiction. Indigenous Env't Network v. Trump, 541 F. Supp. 3d 1152, 1159 (D. Mont. 2021) ("A court must not shy from exercising its jurisdiction. As Chief Justice John Marshall wrote, '[w]e

11

No. 82779-1-I/12

have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'") (alteration in original) (quoting Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 404, 5 L. Ed. 257 (1821)).

Further, clarification of the applicable substantive standards governing when to enter SIJS findings will provide guidance on how to proceed with such cases. Z.J.G., 196 Wn.2d at 161 n.7. Thus, the second factor is met.

As to the third "determinative" factor (likelihood of reoccurrence): as our Supreme Court recently held, "Child custody proceedings take place each day in our state courts, and the correct application of [similarly specialized statutes] is essential to the proper function of these proceedings." Id. Further, here there are allegations, by officers of this court, that in "at least eight cases since 2019 . . . the Snohomish County Superior Court alone has either denied or deferred litigants seeking SIJS findings." In at least two of those cases, the judicial officer claimed it had no authority to enter SIJS findings and referred the movant to the juvenile court. Thus, there is a valid concern this matter does not present a unique occurrence.

As to the fourth factor (genuine adverseness and the quality of advocacy): as in Z.J.G., we have "amici briefs from . . . the Legal Counsel for Youth and Children . . . and Washington Defender Association," as well as four other well-established advocacy organizations. Z.J.G., 196 Wn.2d at 161 n.7. Further, we

12

No. 82779-1-I/13

have an adverse ruling from the court, where the jurisdictional and substantive reasons for the denial of the SIJS Motion are relatively clearly provided. And it is unclear, in the situation of an uncontested parenting plan, who would provide an adverse position to such a motion. Thus, the fourth factor is met.

Finally, as to the fifth factor (likelihood that the issue will escape review): again, as in Z.J.G., these matters can be "short-lived" and are certainly time sensitive because the court must have jurisdiction over the child and custody matter (here a parenting plan) when entering the relevant findings. Id. Further, as amici point out, many SIJS-eligible children are teenagers who will turn 18 years old before any case could make it through the appeals process. (citing Office of Refugee Resettlement, Unaccompanied Children: Facts and Data, https://www.hhs.gov/sites/default/files/uac-program-fact-sheet.pdf (Dec. 20, 2021) (indicating that 72% of unaccompanied children who entered the United States in fiscal year 2021 were aged 15 or older)).

For these reasons, this case satisfies each consideration for establishing an issue of continuing and substantial public interest, and we will consider the case on the merits.

D. The Commissioner's Declination of Jurisdiction

Again, Moreira asserts the family court commissioner erred in declining to hear the Motion. She claims the commissioner's statements that he had no

13

No. 82779-1-I/14

"authority to hear th[ese] matter[s]" was an error of law.[1]  We agree, but not precisely for the reasons Moreira offers.

As reviewed above, under state law, every Washington state superior court may conduct a family court proceeding, which includes issues of child custody. RCW 26.12.010.  In other words, every superior court may conduct a proceeding regarding child custody.  Further, under the regulations interpreting federal law, a "juvenile court" is "a court . . . [that has] jurisdiction under State law to make judicial determinations about the custody and care of juveniles."  8 C.F.R. § 204.11(a). And a "juvenile court," under federal law, may place a child in the custody of a parent and make the other SIJS findings.  8 U.S.C. § 1101(a)(27)(J)(i)-(ii).

Thus, a superior court judge acting as a family court judge (i.e., making determinations of a child's custody) -- or a superior court family law commissioner invested with such authority by the constitution, statute or delegation (reviewed

---

[1] The record is unclear why the commissioner so held.  His claim that he had no "authority" to hear an SIJS motion may have been a statement on federal law, insofar as it defines who may make SIJS findings, as Moreira claims.  Or, it may have been a statement regarding state law, and the limits of his position as a commissioner.  Or, when the commissioner stated that his court "has taken the position that these matters are to be heard by the sitting judge in juvenile court," he simply may have meant that the placement of such decisions in juvenile court was an organizational decision, preference or even a local rule, which he was attempting to respect.  Regardless, whether based in law or rule, the commissioner's statement is clearly a legal justification of some kind and, as such, we review the claim de novo.  Ang v. Martin, 154 Wn.2d 477, 481, 114 P.3d 637 (2005) (citing Kommavongsa v. Haskell, 149 Wn.2d 288, 295, 67 P.3d 1068 (2003)).

14

No. 82779-1-I/15

above) doing the same -- is a "juvenile court" judge for federal law purposes, authorized to making SIJS findings. It was error for the commissioner to conclude otherwise.

Moreira asserts that juvenile courts under state law are not "juvenile courts" under federal law, and that her Motion was not one that "can be assigned to Juvenile Court." Under the same logic above, this too is a misstatement of law. As reviewed above, juvenile courts have jurisdiction over a broad range of matters, including a variety of forms of child custody. RCW 13.04.030(1)(a)-(f). Thus, under federal law, a superior court judge acting as a juvenile court judge -- or a superior court juvenile court commissioner invested with such authority by the constitution, statute or delegation (also reviewed above) doing the same -- is a "juvenile court" judge for federal law purposes, authorized to making SIJS findings.[2]

In short, whether or not a judicial officer is assigned as a family law or juvenile court judge or commissioner under state law, if that judge or commissioner is acting to "determine the custody and care of" a child, they are then a "juvenile court" judge for purposes of federal law. 8 C.F.R. § 204.11(a). A county's

---

[2] Moreira also claims the commissioner's decision to refer her SIJS Motion to the juvenile court judge denied her due process. To the extent that this argument relies on the claim that her Motion could only be heard in family court, we disagree for the same reasons. To the extent this is a distinct constitutional claim, we need not reach that issue.

No. 82779-1-I/16

organizational decisions do not control the definition of a "juvenile court judge" under federal law. In turn, if you are a judicial officer dealing with the "custody and care" of a child, you are thereby authorized to make SIJS findings.

Therefore, the commissioner erred in claiming he had no such authority, which was particularly unfortunate in this case as he was making determinations of ANDM's custody in the context of a parenting plan where time was of the essence.

E. The Judge's Ruling on the Merits

Finally, Moreira asserts the juvenile court judge (judge) erred in refusing to enter the SIJS findings at the hearing on her Motion on April 16, 2021 (hearing). Moriera and amici contend that the judge made an error of law by misinterpreting, misapplying or ignoring the proper law.[3] We agree.

As reviewed in more detail above, there are five factual determinations a court must make in deciding whether to enter an order for SIJS; namely, was the child:

(1) unmarried, 8 U.S.C. §§ 1101(b)(1);

---

[3] Although Moreira and amici largely ask this court to find an error of law, this court instead will evaluate the judge's decision under the abuse of discretion standard, which can encompass both factual errors and improper applications of law. State v. Lord, 161 Wn.2d 276, 284, 165 P.3d 1251 (2007) ("An abuse of discretion is found if the trial court relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law.") (citing Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

No. 82779-1-I/17

(2) under 21 years of age, 8 U.S.C. §§ 1101(b)(1);

(3) "placed under the custody of . . . an individual or entity appointed by a State or juvenile court located in the United States," 8 U.S.C. § 1101(a)(27)(J)(i);

(4) their "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law," 8 U.S.C. § 1101(a)(27)(J)(i); and

(5) has "been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence," 8 U.S.C. § 1101(a)(27)(J)(ii).

The first two determinations were not discussed or disputed in the hearing before the judge. The only evidence in the record is Moreira's declaration where she declared under penalty of perjury that her daughter is under 18 and unmarried.

The third too is undisputed because, as Moreira's counsel pointed out, a commissioner "signed off" on the parenting plan prior to the hearing, placing ANDM in Moreira's custody, and noting that ANDM's father abandoned her, neglected his parental duties, and had few or no emotional ties with her, which speaks to the fourth determination.

As to that fourth determination, the judge "grant[ed] the fact that [ANDM]'s father has not been involved in her life, and has essentially abandoned her." Thus, there was no dispute that reunification with her father was not viable due to that neglect and abandonment.

17

No. 82779-1-I/18

In turn, the only factual determination left was the fifth, whether it would not be in ANDM's best interest to be returned to Honduras. The judge gave two general reasons for his ruling. First, the judge stated, "There's an allegation if [ANDM] is returned to Honduras, that she wouldn't be able to live with anyone. But there is no explanation about why [ANDM]'s mother cannot return to Honduras with her."

In the first sentence, the judge appears to be referring to the following statement in Moreira's declaration:

> If [ANDM] were returned to Honduras, neither of her parents would be able to care for her. My mother is too old to care for [ANDM] now, and she requires assistance to care for herself. My sisters still live in Honduras but have no relationship with [ANDM], and they have their own family and children to take care of.

However, the judge made no reference to the paragraph that follows in Moreira's declaration:

> I provide my daughter with food, shelter, care, security, and love, and will continue to do so. [ANDM] is currently enrolled in high school and is attending school virtually due to the COVID-19 crisis. She is happy, loved, and cared for.

To the extent his decision was based on this first reason, the judge abused his discretion in the following ways. The relevant inquiry is whether it is or is not in ANDM's best interest to return to Honduras based upon the facts before the judge at the hearing. By asking for an "explanation" or showing why *Moreira* is unable to return Honduras, the judge is straying from the straightforward inquiry

18

No. 82779-1-I/19

about what is best for ANDM on the facts before the court at that place and time. The facts were, in short, that ANDM had nothing and no one in Honduras, while being "happy, loved and cared for" here. It was improper to engage in hypotheticals or turn his judicial gaze away from the best interests of the child.

Furthermore, without any factual basis, the judge assumed it was viable for Moreira to return to Honduras at all (economically, socially, etc.) and assumed Moreira could provide the same level of "food, shelter, care, security, and" education in Honduras as she was providing in this country. These are unsupported facts. Gildon v. Simon Prop. Grp., Inc., 158 Wn.2d 483, 494, 145 P.3d 1196 (2006) ("An abuse of discretion is found if the trial court relies on unsupported facts.") (citing Mayer, 156 Wn.2d at 684). In short, by basing his ruling on Moreira's failure to make that superfluous showing, rather than on the best interests of the child, the judge abused his discretion.

The second reason the judge gave for his decision was:

When [ANDM] left Honduras, she wasn't fleeing any type of abandonment, abuse, threats, or anything. . . . There's no allegations that being returned to Honduras is detrimental to her health or well-being. And, in fact, apparently her mother can return to Honduras with her.

The judge abused his discretion in a similar but distinct way in this reason. Again, the straightforward factual determination is whether it is or is not in the best interest of ANDM to return to Honduras. While hypothetically or contextually the

19

No. 82779-1-I/20

facts of her departure may be of interest, nothing in that factual determination requires a petitioner to explain the circumstances of her departure from her home country, let alone meet a certain threshold of trauma upon leaving. An abandoned child could have left her country entirely voluntarily and still meet the requirement that it was not in her best interest to return, given the facts before the court.

Furthermore, the second sentence of that statement is simply contrary to the facts in the record. Moreira stated clearly in her declaration that there is no one to "care for" ANDM in Honduras. It is certainly detrimental to a child's health or well-being to be returned to a country without any caregivers. It was an abuse of discretion to find otherwise. Lord, 161 Wn.2d at 284 ("An abuse of discretion is found if the trial court . . . takes a view that no reasonable person would take . . .").[4]

## III. CONCLUSION

For these reasons, we reverse the commissioner's declination of authority and the judge's denial of the Motion on the merits.

Díaz, J.

WE CONCUR:

Coburn, J.

Smith, C.J.

---

[4] Moreira also claims the judge "erred in telling the mother that she could parent her child in Honduras," which "came disturbingly close to basing its decision on a racist trope" and "probably" violated the Code of Judicial Conduct. By directing the court to the proper type of factual determination, we need not reach that issue.

20