**FILED**
**DECEMBER 31, 2020**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of: | ) | No. 36596-4-III |
| | ) | |
| EDUARDO CHAVEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Petitioner. | ) | |

PENNELL, C.J. — Eduardo Chavez has filed a timely personal restraint petition

challenging his adult judgment and sentence for second degree rape. We grant relief

on two grounds: (1) deprivation of constitutionally effective assistance of counsel when

Mr. Chavez's appellate attorney failed to raise the meritorious claim that the adult

division of superior court lacked authority over Mr. Chavez's case, and (2) denial of the

constitutional right to have the sentencing court consider mitigating circumstances

regarding Mr. Chavez's youth. We grant Mr. Chavez's petition and remand for further

proceedings.

FACTS

In October 2015, 17-year-old Eduardo Chavez faced criminal charges in four separate cases. The first two cases began in juvenile court and were transferred to adult criminal court after decline hearings. The third and fourth cases were filed while Mr. Chavez faced pending trials in adult court for the first two cases. The third and fourth cases were filed directly in adult court without decline hearings.

Juries acquitted Mr. Chavez of all charges in his first two cases before the end of October 2015. Mr. Chavez was not tried for his fourth case until December. His third case was resolved the following April when he pleaded guilty to attempted complicity to drive-by shooting. Mr. Chavez's fourth case involved a charge of second degree rape. That charge is the subject of the current personal restraint petition (PRP).

The allegation giving rise to Mr. Chavez's rape charge occurred shortly before Mr. Chavez's seventeenth birthday. In brief, Mr. Chavez was alleged to have had sexual intercourse with a 15-year-old girl while she was unconscious due to intoxication. Mr. Chavez initially denied sexual contact, but later claimed the encounter was consensual.

During voir dire on the rape case, Juror 1 acknowledged he knew two of the State's detectives. Mr. Chavez used a preemptory challenge to strike Juror 1 from the venire panel. The jury ultimately chosen from the panel convicted Mr. Chavez as charged.

2

At sentencing, Mr. Chavez's attorney requested a sentence at the low end of the adult standard range. He voiced two justifications. First, Mr. Chavez lacked felony criminal history. Second, the attorney claimed Mr. Chavez's crime was "not what you would call a horrific act" since the victim "claimed she was asleep or unconscious or whatever and didn't remember what happened." PRP, App. G at 2.

While the State took "exception to the defense's characterization that rape is not a violent act," it did not recommend a specific sentence, being "of two minds." *Id*. at 2, 6. The prosecutor noted Mr. Chavez appeared to have been a childhood victim of sexual assault and that he had never received appropriate counseling or support. The prosecutor deplored asking the court "to sentence a 17-year-old boy to a significant amount of time in prison and possibly for the rest of his life." *Id*. at 5. The prosecutor also discussed Mr. Chavez's responsible but busy parents, his lack of response to rehabilitation services, his attitude about the rape, his gang involvement, and his "long history of . . . out of control behavior" *Id*. at 7.

After hearing from Mr. Chavez, who emphasized the sexual assault in his past, his family's support, and his desire to leave a gang, the trial court imposed a minimum term of incarceration in the middle of the standard range. Like the State, the court expressed its difficulty determining an appropriate sentence for Mr. Chavez in light of his "age," "criminal history," "gang involvement," "sexual abuse as a child and the charge

3

itself." *Id*. at 10. The court concluded a midrange sentence was "appropriate" based upon what Mr. Chavez had "been through, the victim and the system." *Id*.

Mr. Chavez directly appealed his judgment and sentence on one ground. He argued the trial court erred by excluding evidence of the victim's reputation at school. A majority of this court affirmed. Mr. Chavez later unsuccessfully moved to modify or correct his judgment and sentence under CrR 7.8. Although Mr. Chavez appealed the denial of this motion, he then moved to voluntarily dismiss the appeal. This court granted his motion.

Mr. Chavez timely petitions for relief from his second degree rape conviction.

ANALYSIS

*Ineffective assistance of appellate counsel*

Mr. Chavez first challenges the effective assistance of his appellate counsel. He argues the adult court lacked authority to try him for second degree rape in the absence of a decline hearing, and his appellate attorney failed to effectively assist him when the attorney did not raise this issue on appeal. We agree.

In Washington, a defendant under the age of 18 can be treated as an adult for purposes of superior court jurisdiction if there has been a previous decline hearing and transfer from juvenile court. RCW 13.40.020(15); former RCW 13.40.110 (2009). However, if the charge for which the defendant was transferred resulted in acquittal, the defendant must again be treated as a juvenile unless there are other reasons for extending

4

the adult court's authority. RCW 13.40.020(15). If no exception applies, the defendant must be returned to juvenile court upon regaining juvenile status. *See State v. Posey*, 161 Wn.2d 638, 647, 167 P.3d 560 (2007).

Prior to his second degree rape trial, Mr. Chavez met the definition of a "juvenile" set forth in RCW 13.40.020(15). He was under 18 years of age and had been acquitted of the charges that gave rise to the adult court's authority. No separate basis for proceeding in adult court applied. Mr. Chavez therefore should have been returned to juvenile court for further proceedings. A new decline hearing could have taken place at that point. However, without a new decline hearing, the adult division of superior court lacked statutory authority to act on Mr. Chavez's second degree rape charge.

Our case law has recognized the applicability of post-conviction relief based on ineffective assistance of appellate counsel in circumstances such as Mr. Chavez's, where the attorney on appeal did not address the trial court's failure to treat the defendant as a juvenile. *See In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 777, 100 P.3d 279 (2004); *see also Dillenburg v. Maxwell*, 70 Wn.2d 331, 413 P.2d 940 (1966), *amended on reh'g*, 70 Wn.2d 331, 422 P.2d 783 (1967). Error preservation is unnecessary in this context. *Dalluge*, 152 Wn.2d at 777, 783-84.[1] Nevertheless, Mr. Chavez's applicable remedy is limited. Because he is now an adult, Mr. Chavez's immediate remedy is a substitute

decline hearing in adult court. *Id*. at 783-84. If, after the hearing, the trial court determines declination would have been appropriate "the conviction stands." *Id*. at 786-87. "[B]ut if not, [Mr. Chavez] is entitled to a new trial." *Id*.

The State recognizes Mr. Chavez's petition states a valid claim for relief. Nevertheless, the State contends *Dillenburg* and *Dalluge* were wrongly decided. Whatever the theoretical merits of the State's arguments, they are not for us to decide. We are bound by Supreme Court precedent. *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984).

*Juror bias*

Mr. Chavez asserts he was deprived of the right to a fair and impartial jury because of Juror 1's relationship with the State's detectives. This claim fails for lack of factual support. The record shows Juror 1 was stricken from the venire panel. Thus, whatever bias Juror 1 may have had did not extend to the jury that decided the merits of Mr. Chavez's case. There is no indication any of the individuals who served on the petit jury had a prior relationship with the State's witnesses. Mr. Chavez is not entitled to relief based on juror bias.

---

[1] There is no argument Mr. Chavez affirmatively waived review.

*Failure to consider exceptional mitigated sentence for youth*

Should his conviction stand, Mr. Chavez argues he is entitled to resentencing because the trial court failed to consider mitigating factors regarding his youth, as required by *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017). We agree.

*Houston-Sconiers* announced a new rule regarding juvenile sentencing with two separate but important components. First, courts "*must* consider mitigating qualities of youth at sentencing." *Id*. at 21 (emphasis added). Second, courts "*must* have discretion to impose any sentence below the otherwise applicable" sentencing range. *Id.* (emphasis added). Both components apply retroactively to individuals like Mr. Chavez who were sentenced prior to issuance of the Supreme Court's decision. *See In re Pers. Restraint of Ali*, 196 Wn.2d 220, 226, 474 P.3d 507 (2020).

The first component of *Houston-Sconiers* is at issue here. Compliance with this component requires a sentencing court to acknowledge that children are different. To that end, the court must consider:

> mitigating circumstances related to the defendant's youth—including age and its 'hallmark features,' such as the juvenile's 'immaturity, impetuosity, and failure to appreciate risks and consequences.' It must also consider factors like the nature of the juvenile's surrounding environment and family circumstances, the extent of the juvenile's participation in the crime, and 'the way familial and peer pressures may have affected him [or her.]' And it must consider how youth impacted any legal defense, along with any factors suggesting that the child might be successfully rehabilitated.

*Houston-Sconiers*, 188 Wn.2d at 23 (alteration in original) (citations omitted) (quoting

*Miller v. Alabama*, 567 U.S. 460, 477, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)).

Unsurprisingly, the record here shows the trial court did not predict the new rule

established by *Houston-Sconiers*. Although the court noted Mr. Chavez's age, it did not

address the issues related to juvenile brain science and development as set forth above.

Nor did counsel bring these matters to the court's attention. Given this record, it is

apparent Mr. Chavez's sentencing did not meet the constitutional requirements of

*Houston-Sconiers*.

The court's failure to comply with *Houston-Sconiers* does not necessarily entitle

Mr. Chavez to relief; Mr. Chavez must also establish prejudice. *In re Pers. Restraint of*

*Domingo-Cornelio*, 196 Wn.2d 255, 268, 474 P.3d 524 (2020). To meet this burden, Mr.

Chavez must show by a preponderance of the evidence that his sentence would have been

shorter if the sentencing judge had complied with the dictates of *Houston-Sconiers*. *See In*

*re Pers. Restraint of Meippen*, 193 Wn.2d 310, 317, 440 P.3d 978 (2019). Merely raising

the "possibility" of a different sentence is inadequate. *Id*.

Mr. Chavez has met his burden of showing prejudice. There is no evidence the

sentencing judge considered whether Mr. Chavez's offense conduct was impacted by the

mitigating qualities of his youth. *Cf. id*. at 316 (no prejudicial error under *Houston-*

*Sconiers* where defense counsel argued mitigating factors based on youth, but court still

imposed a high-end sentence). While the court here did not select a sentence at the low end of Mr. Chavez's standard range, the court made plain that it had struggled finding an appropriate sentence. The court expressed concern over whether Mr. Chavez's actions had been impacted by his experiences as a child victim of sexual assault. Had the sentencing court had the benefit of *Houston-Sconiers* and considered Mr. Chavez's history of abuse together with the brain science regarding age, there is a substantial likelihood the trial court would have opted for something less than a sentence at the mid-point of the adult standard range. Mr. Chavez has therefore met the standard for relief based on prejudice.

## CONCLUSION

Mr. Chavez's petition for relief from personal restraint is granted. This matter is remanded for further proceedings. On remand, the trial court shall conduct a substitute decline hearing pursuant to *Dillenburg*. If, after considering the matter de novo, the court determines declination was appropriate, Mr. Chavez's conviction will stand, but he will be entitled to resentencing consistent with the terms of this decision and *Houston-Sconiers*. If declination is determined to have been inappropriate, Mr. Chavez will be entitled to a new trial.

No. 36596-4-III
*In re Pers. Restraint of Chavez*


A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Pennell, C.J.

I CONCUR:

_____
Siddoway, J.

No. 36596-4-III

KORSMO, J. (dissenting) — I disagree with the majority's decision to accept the State's concession here.[1] This primarily is a timing problem, and existing case law establishes that Mr. Chavez's argument looks to the wrong time. He was a former "juvenile" whose first two cases properly had been declined at the time that this rape prosecution was filed in adult court. The ensuing acquittals on the earlier cases would only have impacted any future crimes committed while still a juvenile, but not this or another already charged case.[2] Mr. Chavez was not considered a juvenile at the time the rape case was filed in adult court under the plain language of the statute. In addition, this case is not an automatic decline case and does not suffer from the defects identified by *In re Personal Restraint of Dalluge*, 152 Wn.2d 772, 100 P.3d 279 (2004).

---

[1] While I understand the State's desire to revisit *In re Personal Restraint of Dalluge*, 152 Wn.2d 772, 100 P.3d 279 (2004), its argument fails to account for the changes that have occurred to the declination statutes subsequent to that case. This is the wrong case, as well as the wrong court, in which to make its argument.

[2] I also fail to see how Mr. Chavez can show prejudice here. His guilty plea in adult court on the fourth case for a crime committed while he was a juvenile also would require the trial court to recognize that this case properly was in adult court even apart from the *Dillenburg* hearing. Nor can he show that he would likely prevail on a decline hearing before a court that had just declined him for two other cases.

The law of this state has been summarized in short hand as "once declined, always declined," based on a statement from *State v. Sharon*, 100 Wn.2d 230, 232, 668 P.2d 584 (1983) ("*Kent* does not mandate an additional decline hearing on subsequent offenses.") That policy made eminent sense for cases declined from juvenile court pursuant to *Kent v. United States*, 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966). Once the juvenile court already had determined that it no longer had the services or ability to rehabilitate the youthful offender, there was no reason to return the youth for another decline hearing merely because he continued his criminal behavior. *See Sharon*, 100 Wn.2d at 232. The *Kent* decline authority was codified in RCW 13.40.110.

But in addition to the offender-oriented *Kent* declination process, a second method was created in 1994 to put certain serious offenses in adult court regardless of the age of the offender. Specified offenses and offenders of certain ages were excluded from the juvenile court's otherwise exclusive jurisdiction over youthful offenders. LAWS OF 1994, 1st Spec. Sess., ch. 7, § 519. One result of the "automatic decline" process that focused on the offense instead of the offender was that young offenders no longer were necessarily subjected to the juvenile court's weighing of the offender's rehabilitative needs and its ability to provide them. Because it was treated as a charge-specific exclusion from juvenile jurisdiction, an adult court verdict on a lesser offense created a situation where the adult court no longer had authority to sentence in light of the juvenile

2

court's exclusive jurisdiction over the offense. *Dalluge*, 152 Wn.2d 782-787.[3] Another

consequence of a crime-centric approach is that an acquittal likewise would result in a

youthful offender still being subject to juvenile court jurisdiction for future offenses.

The legislature since has narrowed the class of offenders and the types of cases

that are subject to automatic decline. *See* LAWS OF 2019, ch. 322, § 9; LAWS OF 2018, ch.

162, § 2; LAWS OF 2009, ch. 454, § 1. In addition, the legislature has narrowed the

discretion of juvenile courts to send youthful offenders to adult court and has treated

juveniles who were acquitted in adult court or were convicted of lesser charges following

discretionary declinations in the same manner as similarly situated automatically declined

offenders. *See* LAWS OF 2018, ch. 162, §4; LAWS OF 2009, ch. 454.

In light of those changes, the legislature currently has redefined the term

"juvenile" to mean:

> any individual who is under the chronological age of eighteen years and
> who has not been previously transferred to adult court pursuant to RCW
> 13.40.110, unless the individual was convicted of a lesser charge or
> acquitted of the charge for which he or she was previously transferred

---

[3] This is the reason that *Dalluge* has no significant relationship to this case. There the 17-year-old defendant was in adult court due to being automatically declined on a charge of first degree rape. 152 Wn.2d at 776. The charge was amended to second degree rape, an offense not subject to automatic decline, and the jury returned verdicts on two counts of third degree rape. *Id.* The court concluded that adult court lacked jurisdiction over the case and remanded to the juvenile court to determine whether it would have declined the case to adult court in accordance with *Dillenburg v. Maxwell*, 70 Wn.2d 331, 422 P.2d 783 (1967). *Dalluge*, 152 Wn.2d at 782-787. Unlike *Dalluge*, this is not an automatic decline case, but is a straight forward *Dillenburg* issue resulting from a discretionary declination.

pursuant to RCW 13.40.110 or who is not otherwise under adult court jurisdiction.

RCW 13.40.020(15). This current definition was adopted by Laws of 2009, ch. 454, § 2, making it the law in effect at the time of Chavez's crimes. That definition also establishes that Mr. Chavez was properly in adult court on the rape allegation.

Since, at the time the rape charges were filed, Mr. Chavez previously had been transferred to adult court pursuant to the decline provisions of RCW 13.40.110, he was no longer a "juvenile" and was beyond the authority of the juvenile court. The parties, and the majority, reason that the subsequent acquittals on the first two cases brought his situation within the acquittal exception to the definition. However, our case law very clearly states that adult court authority to act is based on the circumstances existent at the time of declination.

On point are *Sharon* and *State v. Oreiro*, 73 Wn. App. 868, 871 P.2d 666 (1994). In *Sharon*, the defendant was declined to adult court by the Lewis County Juvenile Court on a charge of second degree assault; seven months later the King County prosecutor filed burglary charges in that county's juvenile court. 100 Wn.2d at 231. Upon learning of the Lewis County action, the prosecutor sought to dismiss the charges for refiling in adult court. The trial court denied the motion, but the Court of Appeals reversed. *Id*. Affirming this court, the Washington Supreme Court noted the unambiguous statutory command that one transferred to adult court no longer is a juvenile. *Id*. The court also

pointedly noted that due process did not require a second declination hearing once a proper hearing had been held. *Id*. at 232.

Even more firmly on point is *Oreiro*, an action arising in Pierce County. Six felony charges were filed in the juvenile court in late 1990. 73 Wn. App. at 870. The court granted the State's request to decline jurisdiction of the three most recent crimes to adult court; the other three charges were dismissed without prejudice. *Id*. The three offenses that had led to the declination hearing were filed in adult court; the following month, the three dismissed counts were added by an amended information. *Id*. The trial court rejected the defendant's motion to dismiss the most recently added counts. *Id*. at 870-871. A jury convicted him on two of the three challenged counts and Mr. Oreiro appealed to this court. *Id*. at 871.

This court began its analysis of the timing problem presented by the case by stating that it involved "past offenses (using the date of declination as a point of reference)." *Id*. at 872. The court recognized: "Jurisdiction over an offense committed by a juvenile is determined <u>at the time proceedings are initiated</u> against the alleged offender." *Id*. (emphasis added). From that premise, this court determined that even though the original offenses predated the declination ruling, the dismissal divested the juvenile court of its jurisdiction. *Id*. The charges were properly refiled in adult court. *Id*.

As *Oreiro* notes, jurisdiction is determined at the time of initiation. Here, the rape charge was filed after two other cases recently had been declined to adult court. The

5

transfer of those two cases meant that Mr. Chavez no longer was a juvenile at the time the rape charge was filed. Juvenile court had no jurisdiction over him.

The fact that both of the original cases ended in acquittal is of no consequence here since those events postdated the charging of this case. At the time the rape case was filed in adult court, it was in total compliance with the statute and there was no reason to have a third declination hearing concerning Mr. Chavez's suitability for juvenile court. Our case law dictates that initiation of charges is the relevant date. Nothing in the legislative history suggests that the definition of "juvenile" can change during the course of the case, let alone that any change would be applied retroactively.[4] The acquittal has consequences for future cases that have not been initiated, but it has no effect on a case properly initiated in adult court.

Accordingly, I dissent from the majority's uncritical acceptance of the State's concession.

_____
Korsmo, J.

---

[4] It is likely that the legislature did not consider the problem of serial prosecutions resulting in mixed verdicts of conviction and acquittal when it adopted the definition.